STEVEN THIELBAR, A MINOR, BY STANLEY
THIELBAR, HIS FATHER AND NATURAL
GUARDIAN, AND OTHERS v. ELWYN LEE JUENKE
AND OTHERS.
ELWYN LEE JUENKE v. MANFORD ISAACSON
AND ANOTHER.

189 N. W. (2d) 493.

August 20, 1971—Nos. 42664, 42717.

130

*Newcome, Wallace & Newcome, Richard N. Newcome, Roger T. Sahr,* and *Robert E. McGinty,* for appellant Juenke.

*Baudler & Baudler* and *William J. Baudler,* for appellant Kvam Masonry Company.

*Walbran & Walbran* and *John P. Walbran,* for plaintiff respondents Thielbar.

*Osmund H. Ause* and *Ross M. Muir,* for plaintiff respondent Southworth.

*Robert G. Lampe,* for plaintiff respondents Wille.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, Mary Jeanne Coyne,* and *William D. Flaskamp,* for respondents Isaacson and Bauernfeind.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

MURPHY, JUSTICE.

Two appeals in actions growing out of an intersection collision between a school bus and a truck. The appellants, the driver and the owner of the truck, complain that the trial court erred in refusing to instruct the jury on the "sudden emergency" rule; that the trial court erred by submitting special verdict containing interrogatories calling for answers "that are conclusions of law rather than findings of fact;" and that, under the comparative negligence statute, Minn. St. 604.01, the jury erred in apportioning percentage of negligence.

Several actions were commenced by a passenger in the truck and by occupants of the school bus seeking recovery for damages for personal injuries suffered as a result of the collision. These actions were brought against Elwyn Lee Juenke, the driver of the truck; Kvam Masonry Company, his employer and owner of the truck; Wilmer R. Bauernfeind, the driver of the school bus; and Manford Isaacson, the owner of the bus. The actions were consolidated with one instituted by Juenke against Isaacson and Bauernfeind for personal injuries allegedly sustained by Juenke growing out of the same event.

From the record it would appear that, on September 27, 1968, the school bus, with 22 children as passengers, was proceeding on a graveled township road which runs in an east-west direc-

tion and intersects at right angles with Rice County Road No. 24, which runs in a north-south direction. Both are graveled roads. Rice County Road No. 24 is protected by a "yield" sign. The bus approached the intersection from the east while the truck approached the intersection from the north. Although the area is generally level, there is a pronounced dip in the county road commencing about 700 feet north of the intersection. The bus driver's vision at the intersection was unobscured except for a cornfield to his right. It would appear that the jury could find from the record that as the bus driver approached the intersection and came abreast of the "yield" sign, he gradually reduced his speed to 5 to 10 miles an hour, shifting into low gear. He observed no traffic coming from the south and no oncoming traffic to the north. He then proceeded across the intersection. When the front of the 30-foot bus was some 15 feet west of the intersection, it was struck just forward of the rear dual wheels by the pickup truck operated by Juenke.

The truck hit the bus with sufficient force to cause it to move sideways a distance of 52 feet west of the intersection. The bus came to rest on its side against a tree at that point and resulted in a scarring of the tree 12 feet 2 inches from the ground. Respondents argue from this fact that the bus, which was 8 feet 8 inches high, was actually lifted from the ground by the force of the collision, indicating the excessive speed at which the truck was moving. The heavy channel iron beams and crankshaft of the bus were bent forward some 8 inches. The truck ended up on its left side against the rear of the bus. The lumber and equipment from the truck were scattered about the area.

Four of the occupants of the bus stated that they glanced to the north as they passed through the intersection and saw the pickup truck which, according to their estimates, was from half a block to a block and a half away at the time. In the relatively brief views which the occupants had, no one was able to arrive at an estimate of the speed of the oncoming truck. Juenke and his passenger sustained retrograde amnesia and were unable to

testify as to the circumstances of the collision. The evidentiary materials which the jury had for determining the issue of fault consisted largely of undisputed physical facts. The weight of the bus with its occupants was approximately 20,000 pounds. A witness who heard the collision 1½ miles away said it was "like somebody tossing a galvanized washtub on a cement floor."

Although Juenke, because of amnesia, could not explain his conduct, he admitted that he was familiar with the intersection and that, had he looked, the big, orange school bus would have been clearly visible to him over the top of the cornfield as he approached the intersection. There was no indication of skid marks or other evidence to suggest Juenke intended to brake or vary his course. On the other hand, the jury could find, as it undoubtedly did, that because of the dip in the road and the high speed of the truck the bus driver was excused for his failure to see the truck when he looked to the north, and that his failure to look again was slight negligence compared with Juenke's failure to avoid the collision, either by slowing down or by driving through the intersection to the rear of the bus.

Respondents argue that on the basis of the evidence as a whole the jury could well find that the bus driver did not violate the "yield" sign statute, Minn. St. 169.201, because the truck was not "so close as to constitute an immediate hazard" and that Juenke by reason of his speed, forfeited the right-of-way under § 169.20, subd. 1.

■ It is contended by appellants that the trial court erred in refusing to give an instruction on the so-called "emergency doctrine" which, as expressed in Minnesota Jury Instruction Guides, Instruction 110, provides:

"A person confronted with an emergency through no negligence of his own who, in an attempt to avoid the danger, does not choose the best or safest way, is not negligent because of such choice unless the choice was so hazardous that a reasonable person would not have made it under like circumstances."

We have discussed the application of the emergency doctrine

in numerous cases. Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687; Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134; Anderson v. Davis, 151 Minn. 454, 187 N. W. 224; Hacker v. Berkner, 263 Minn. 278, 117 N. W. (2d) 13; Henjum v. Bok, 261 Minn. 74, 110 N. W. (2d) 461; Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329. The rule is of no avail to one whose own conduct is the sole factor causing him to be placed in a position of obvious danger. In Kachman v. Blosberg, 251 Minn. 224, 235, 87 N. W. (2d) 687, 695, we said:

"* * * The testimony in this case strongly tends to establish that whatever may have existed in the way of a sudden emergency occurred either because of defendant's speed or his failure to keep a proper lookout, or both. We have said that the sudden-emergency rule is inapplicable unless it be first determined that there existed a real peril, to which the party seeking its protection did not contribute by his own want of care, and that the rule cannot be successfully invoked by a party who has brought the emergency upon himself or who has failed in the application of due care to avoid it. Therefore any act, or failure to act, amounting to a lack of due care defeats the right to claim the benefit of the emergency rule."

We cannot agree that the trial court erred in denying the instruction. On the basis of the undisputed facts, it would have been wholly inappropriate. If Juenke had been traveling at a reasonable speed, he could easily have avoided the collision. The slow-moving bus was in plain sight, and there was ample opportunity for him to avoid the collision. There is no evidence that he applied his brakes or attempted to vary the course of his truck in any respect. There was no issue for the jury as to whether Juenke failed to use the best and safest way to avoid the danger because all of the evidence compels the conclusion that he made no attempt to avoid the collision.

Appellants' next complaint is that the trial court erred in submitting an incorrect form of verdict. The trial court sub-

mitted to the jury a special verdict which included five questions. The first question—whether Juenke was negligent in the operation of the truck—was answered in the affirmative. The second question—whether such negligence was a direct cause of the accident—was also answered in the affirmative. Question No. 3 —whether Bauernfeind was negligent in the operation of the school bus—was answered in the affirmative; but Question No. 4—whether Bauernfeind's negligence was a direct cause of the accident—was answered in the negative. Under the circumstances, the jury did not answer Question No. 5, the purpose of which was to apportion negligence. After the special verdict was returned, the court directed the jury to reconsider Question No. 5 and to apportion the negligence as though they had answered Question No. 4 in the affirmative. The jury accordingly retired and promptly returned with a completed verdict, determining Juenke's negligence at 90 percent and Bauernfeind's at 10 percent (Minn. St. 604.01). The court ruled, as a matter of law, that the jury's answer to Question No. 4 be changed to "yes" and adopted the jury's findings as amended. The court's action in requiring the jury to reconvene for the purpose of apportioning negligence may be explained by the fact that the attorney for respondents Bauernfeind and Isaacson had admitted actionable negligence in his final argument.

It is in the context of the foregoing trial proceeding that the issue as to the form of the special verdict arises. It is not contended that the trial court erred in reconciling the answers. Appellant Juenke contends, however, that the trial court erred in submitting questions which permitted findings of ultimate conclusions instead of separate evidentiary facts. He seeks to persuade the court that Rule 49.01, Rules of Civil Procedure, requires that answers to interrogatories be limited to questions of pure fact.[1] Mixed questions of law and fact, it is contended, are not permitted under the rule.

---

[1] Rule 49.01, Rules of Civil Procedure, provides: "The court may require a jury to return only a special verdict in the form of a special

We find nothing in the language of Rule 49.01 which compels this conclusion. While it may be true that we have not expressly said so, we have, in a number of cases, given tacit approval to special verdicts in the form of ultimate fact questions. Hill v. Wilmington Chemical Corp. 279 Minn. 336, 156 N. W. (2d) 898; Mikes v. Baumgartner, 277 Minn. 423, 152 N. W. (2d) 732; Whelan v. Gould, 259 Minn. 203, 106 N. W. (2d) 893; Larson v. Degner, 248 Minn. 59, 78 N. W. (2d) 333; see, also, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 288. Rule 49(a), Federal Rules of Civil Procedure, which is identical with the Minnesota rule, has been interpreted to contemplate the use of ultimate, as distinguished from evidentiary, fact questions. McDonnell v. Timmerman (8 Cir.) 269 F. (2d) 54. It is observed in Baierl v. Hinshaw, 32 Wis. (2d) 593, 598, 146 N. W. (2d) 433, 436, that the use of the ultimate-fact type of verdict not only simplifies the form of special verdicts in negligence actions but also eliminates "the thorny problem of duplicitous findings of negligence which frequently arose to plague both the trial courts and this court." See, also, Uvland v. Mattson, 289 Minn. 365, 184 N. W. (2d) 423. This is not to say that evidentiary fact questions should never be used. There may be situations where it would be appropriate and advisable to submit interrogatories in that

---

written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and require written findings thereon as it deems most appropriate. The court shall give to the jury such explanations and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

form, but, certainly, in this case it is unnecessary to consider that question since neither of the appellants here objected in any way to the form of the special verdict. Although the special verdict was discussed by counsel with the trial judge, no suggestions or requests as to form were submitted. It would appear that failure to object prior to submission to the jury constitutes a waiver of any objection which a party may have. Raymond v. Baehr, 289 Minn. 24, 184 N. W. (2d) 14; Baierl v. Hinshaw, *supra*.

■ We have already alluded to the circumstance that the jury apportioned 90 percent of the total negligence to Juenke. Appellants contend that this determination is manifestly erroneous in view of the fact that Juenke was "the driver on the through highway." In considering this asserted error, it is necessary to again advert to the unusual situation growing out of the fact that the jury found Bauernfeind's conduct was not a proximate cause of the accident in spite of his attorney's admission of liability in the closing argument. The jury's action is understandable in view of the total facts which overwhelmingly attest to the force and violence of the collision. The excessive speed of the truck driven by Juenke, together with his failure to either see what was in plain sight or to make any attempt to avoid the collision, was so great that the jury would understandably feel that any contributing fault on the part of Bauernfeind was not significant. At any rate, the trial judge, on getting the verdict, told the jurors, in effect, to answer the comparative negligence question on the basis that Bauernfeind's negligence, as found by them, was a contributing cause of the accident. Cf. Statz v. Pohl, 266 Wis. 23, 62 N. W. (2d) 556, 63 N. W. (2d) 711; Merkle v. Behl, 269 Wis. 432, 69 N. W. (2d) 459.

In considering this objection on a post-trial motion, the trial court, in his memorandum, stated:

"We fail to see how sending the jury out to make a finding, under comparative negligence question, could prejudice Juenke * * * because it resulted in an affirmative finding that Bauernfeind was a concurring cause of the accident."

We have been provided with no authorities which would prompt us, on the basis of the record in this case, to change or revise the findings here.

Numerous other errors are asserted which are not of sufficient substance to require more than a general observation that, in the context of the whole record, it is established that the accident occurred because defendant Juenke drove blindly into the intersection at an excessive rate of speed. There was evidence from which the jury could find that Bauernfeind slowed to 5 miles an hour at the "yield" sign and looked to the north; that Juenke's vehicle was neither visible nor "so close as to constitute an immediate hazard"; and that, by reason of his unreasonable speed, Juenke forfeited the right-of-way which he otherwise might have had. Minn. St. 169.20, subd. 1. Thus, the jury's determination that Juenke was 90 percent at fault was amply justified by the evidence and the law.

Affirmed.