ROGER HILL AND ANOTHER v.
OKAY CONSTRUCTION COMPANY, INC.,
AND ANOTHER.
E. E. RANTA, APPELLANT.

252 N. W. 2d 107.

March 18, 1977—Nos. 46374, 46414.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, W. D. Flaskamp, and John Hally Riley, for appellant.

Rischmiller & Wasche and Robert Wm. Rischmiller, for respondents Hill.

Hvass, Weisman & King and Russell Pannier, for respondent Okay Construction Company, Inc.

SHERAN, CHIEF JUSTICE.

This is an appeal by defendant E. E. Ranta from a judgment entered against him in district court and from an order denying his motion for amended findings of fact, conclusions of law, and order for judgment or in the alternative for a new trial. Defend-

ant Okay Construction Company, Inc. (Okay), also seeks review pursuant to Rule 106, Rules of Civil Appellate Procedure.

Stated generally, the problems considered in the lower court were (a) the nature of a business relationship between plaintiffs, Roger and Judith Hill, and Okay; (b) the liability for the operating debts of the business at one time owned by the Hills and allegedly purchased by Okay; (c) the professional malpractice of Ranta, an attorney, in his representation of both the Hills and Okay during the course of their transactions; and (d) the rights of the respective parties to indemnity.

The material facts of this case are vigorously disputed, but viewing the evidence, as we must, in a light most favorable to the verdict, they may be stated as follows:

In August 1971, the Hills began business under the name of Romans. Romans consisted of three separate enterprises: Romans' Personnel (an employment agency); Romans' Furniture (an interior design studio); and Romans' Audio Classics (retail sales of stereo components). Although the Hills filed articles of incorporation for Romans, they did not complete the incorporation process and continued to operate their business as a sole proprietorship.

The principal assets of Romans were the building which housed the business, located at 8012 Cedar Avenue South, Bloomington, Minnesota, and the furnishings in it. These assets were purchased in June or July 1971, for $180,000 and $15,000 respectively.

The enterprises were not successful. By the spring of 1972 the Hills were short of cash, heavily indebted, and pressed by creditors. It was during this time, about June 1972, that they met Ranta.

Roger Hill consulted Ranta regarding these financial problems, and Ranta agreed to look into the matter. A series of meetings between Ranta and the Hills followed wherein Ranta reviewed the Hills' records to ascertain their financial condition. In an effort to reduce the pressure from creditors, Ranta com-

posed a form letter for the Hills to distribute to their creditors, requesting forbearance in collection efforts and suggesting the possibility of settling all outstanding accounts for payment of 75 percent of the balances due. There is also some evidence that Ranta represented the Hills as plaintiffs in a suit to collect one of their accounts receivable.

Near the end of June or beginning of July, Ranta told the Hills that he knew "somebody that might be interested in helping them out." That "somebody" was another of Ranta's clients, Okay.

Ranta had represented Okay continuously since its inception in the early 1950's. He believed that Okay was faced with the possibility of an accumulated earnings tax assessment by the Internal Revenue Service and had advised Felix Kvasnicka, president of Okay, that an investment of Okay's capital surplus would avoid such an assessment. Ranta felt that Romans presented an opportunity for just such an investment.

The Hills, Kvasnicka, and Ranta met in Ranta's office in July 1972 and decided to proceed with some sort of business relationship. Subsequent meetings were held to work out the details of the arrangement. It is regarding these details that the testimony of the parties differs most markedly. It is undisputed, however, that Ranta undertook to represent both the Hills and Okay in this transaction.

Roger and Judith Hill testified that they believed they were selling their entire business to Okay. In their minds, this meant transferring to Okay the physical assets of the business, the accounts receivable, and all of the liabilities of Romans. They executed an assignment of their vendees' interest in the contract for deed by which they were purchasing the Cedar Avenue property, along with a quitclaim deed for the same property. They also executed a bill of sale for all of the personalty contained in the building. These documents reflected consideration in the amounts of $20,000 and $10,000 respectively, which was the equity the Hills had in the property. The Hills testified and the trial judge found that they never received this $30,000. Roger

Hill continued to run the business as a salaried employee. The Hills further understood that they had the right to repurchase their business at a future date.

On the other hand, Kvasnicka testified that it was never his intention to have Okay purchase the business of Romans; rather, from his discussions with Ranta he understood that Okay would be lending the Hills money, and in return Okay would receive title to the building and furniture as security. Both Okay and Ranta contended that the first $30,000 advanced was to constitute payment of the consideration called for in payment for the Cedar Avenue building and the furniture. The amount of the loan was not fixed, but rather was open ended. As Romans needed more money, Okay would advance it, believing the loan was secured by a rather substantial equity in the Cedar Avenue building. The building and personal property were to be reconveyed to the Hills at some future date, if and when they repaid all sums advanced plus some percentage to cover the increased value in the property due to inflation.

In addition to this testimony, the jury considered evidence regarding the conduct of the parties which was probative of their agreement.

Funds were transferred to Romans through the establishment of a special bank account for Okay. Deposits were made by Okay into that account, and the checks drawn on it were drafted by the Hills and signed by Kvasnicka or Ernest Johnson, Okay's vice president. Roger Hill testified that Ranta approved all of the checks before they were presented to Kvasnicka or Johnson. Kvasnicka testified that he believed Ranta approved most of the checks before he signed them. Ranta denied this. It is undisputed that all the checks were executed by either Kvasnicka or Johnson.

Both Ranta and Kvasnicka participated in the selection of a new interior design manager for Romans' Furniture.

Judith Hill testified that subsequent to the transaction Kvasnicka and Johnson were introduced to Romans' employees. Ann

McGee, a Romans personnel counselor, recalled that Kvasnicka was introduced as the new owner. Richard Brown, manager of the personnel division, recalled that he personally introduced Kvasnicka and Johnson, without objection from either, to some of the employees "as President and Vice-President of Okay Construction which * * * we are now a part of." Neither Kvasnicka nor Johnson was examined on this point at trial.

By far the most concrete collateral evidence of the Okay-Romans relationship consists of an application for credit made by Romans and two financial profiles of Okay, all of which were executed by Kvasnicka.

Judith Hill testified that Romans' credit was insufficient to place the fall orders for merchandise and that it became necessary to obtain from Okay some indication of its involvement with Romans. One such document was a credit application to Rotel of America, Inc., an audio supplier. The credit application consisted of a one-page document listing Romans' Audio Classics as the credit applicant and, more importantly, showing it as a subsidiary of Okay. Further, both Kvasnicka and Johnson were listed, as president and vice president respectively, as the principal owners. The document, dated November 2, 1972, was signed by Kvasnicka. Roger Hill testified that this document was also discussed with Ranta. Ranta denied this. Kvasnicka, however, testified that he discussed the Rotel application with Ranta prior to executing it.

The jury was also allowed to consider the execution of the disputed financial profiles of Okay. These documents were identical except that one denoted Romans' Furniture as a division of Okay, and the other so denoted Romans' Audio Classics. Roger Hill testified, and the jury found, that both Ranta and Kvasnicka approved these financial profiles and authorized their distribution to audio and furniture suppliers. Kvasnicka admitted executing the documents, but claimed that he first became aware of their dissemination to the trade in 1973 when copies were attached to pleadings in lawsuits instituted to collect delinquent

Romans accounts payable. Ranta denied any knowledge of the profiles or any other type of credit authorization and denied that he ever authorized these profiles to be distributed. Judith Hill testified that these profiles had in fact been distributed, and Romans again received credit from the suppliers who were given copies of such documents.

Some of the other evidence adduced at trial tended to support the contentions of Okay and Ranta regarding the nature of the business relationship between the Hills and Okay. There was the fact that the Hills continued their day-to-day management of Romans; this is tempered somewhat by the control Ranta and Okay exerted over disbursements and hiring. Ray Rand, Okay's accountant, testified that the monies advanced to Romans were carried on Okay's books as a loan and that Okay never took any tax deduction for Romans' operating losses. Such a deduction, if taken, would have resulted in substantial tax savings for Okay.

Additionally, Ranta was examined at length regarding the applicability of the bulk transfers provisions of the Uniform Commercial Code, which admittedly would have applied if there had been a sale of the entire business. He testified that none of its provisions were complied with because the transaction was not a sale, but rather a loan.

The parties continued their relationship until April 1973, when an embezzlement of approximately $100,000 from Romans by a business associate of the Hills was discovered. The ultimate responsibility for this loss as between the parties was not an issue at trial. It appears from the record that this was by agreement of the parties.

Upon discovery of the embezzlement, Okay refused to advance any more funds to Romans. According to the Hills, it was at this point in time that they first learned of Okay's contention that their transaction was a loan rather than a sale. The Hills continued to operate Romans through 1974, when they finally were financially unable to continue the business.

The Hills instituted this action against Okay to recover the

purchase price allegedly owed them for the sale of their business, to recover compensation for the services they rendered on behalf of the business after the sale, and 'for indemnity from Okay for the claims of Romans' creditors. The Hills later amended their complaint to include a claim against Ranta for professional malpractice. Okay cross-claimed against Ranta, also asserting a claim for malpractice.

The case was tried to both the court and jury. A special verdict was submitted to the jury, and the trial court made additional findings of fact and conclusions of law incorporating the jury's findings. The special verdict and findings of the trial court are set forth in the appendix to this opinion. The jury returned a verdict favorable to the Hills in all respects and adverse to Okay. Additionally, it found that Ranta was negligent with respect to his representation of both the Hills and Okay.

The issues on appeal are:

1. Was the evidence sufficient to support the jury's verdict and the trial court's findings?

2. Did the trial court properly submit the issue of Ranta's negligence to the jury by its special verdict?

3. Were the supplemental findings of fact made by the trial court proper and consistent with the jury's verdict?

4. Were the trial court's conclusions of law properly drawn from the findings of fact?

Before we discuss each of these issues, some preliminary comments are necessary. It must be kept in mind that at trial three legally distinct, albeit factually related, claims were at issue. First, there was the nature of the business transaction between the Hills and Okay. A resolution of this claim would determine in large part the posture of the parties when the second and third issues were confronted by the court and jury. These latter two issues involved the alleged legal malpractice of Ranta with respect to his representation of the Hills and Okay. It is with this formulation of the claims at bar in mind that we review the issues raised on appeal.

■ *Sufficiency of the evidence.*

Viewing the evidence as a whole, we find that it supports the special verdict of the jury and the findings of the trial court with respect to both the business relationship between the Hills and Okay and Ranta's negligent representation of the Hills and Okay.

The jury and the trial court found that the transaction was, in every respect, as the Hills contended. Specifically, Okay contends that because all of the essential terms to the transaction between it and the Hills were not agreed upon, the jury could not have found that there was a valid contract of sale. We hold that the evidence was sufficient to support the jury's determination.

The test of contractual formation is an objective one, to be judged by the words and actions of the parties and not by their subjective mental intent. See, 4 Dunnell, Dig. (3 ed.) § 1742. In order for a contract to be specifically enforced, it is not necessary that the parties agree on every possible point, but rather, the law requires merely that the parties' intent as to the fundamental terms of the contract can be ascertained with reasonable certainty. Furuseth v. Olson, 297 Minn. 491, 210 N. W. 2d 47 (1973); Kennedy v. Hasse, 262 Minn. 155, 114 N. W. 2d 82 (1962).

We have already discussed the evidence in detail. Viewing that evidence in the light most favorable to the verdict, these basic terms of the agreement are ascertainable:

(1)   The Hills would convey to Okay all of the assets of Romans, including the building and furniture and all accounts receivable;

(2)   In return, Okay would pay to the Hills the sum of $30,000 and assume all of the accounts payable of Romans;

(3)   Roger Hill would continue to supervise the day-to-day operation of Romans, subject to the general control of Okay; however, all expenditures required specific approval of Okay; and

(4)   Okay would grant to the Hills an option to repurchase

the business at some time in the future, for whatever amount of capital Okay had invested in the business, plus 10 percent per annum as a premium to account for the increased value of the assets of the business due to inflation.

Okay seeks to establish from portions of the Hills' testimony that there was no agreement, but merely an agreement to agree which was indefinite as to certain material terms such as time for performance. However, the Hills were adamant that the basic transaction outlined above had been consummated. Additionally, the jury had for its consideration the testimony of all the other witnesses and the evidence of the conduct of the parties. While no time limitations were ever discussed, where a contract is silent as to the time of performance, the general rule is that the contract must be performed within a reasonable time. This omission alone will not defeat the formation of a contract. The law does not favor destruction of a contract for indefiniteness. King v. Dalton Motors, Inc. 260 Minn. 124, 109 N. W. 2d 51 (1961); Furuseth v. Olson, *supra.* That maxim is especially true where, as here, there has been such extensive performance on the part of both parties.

Ranta contests the sufficiency of the evidence as it relates to the second and third claims at bar, namely his allegedly negligent representation of the Hills and Okay. Specifically, he contends that there was insufficient expert testimony presented to the jury to enable it to render a competent judgment of his conduct.

The record reveals that Ranta graduated from the Law School of the University of Minnesota in 1942. He worked for a number of years as a tax examiner for the Minnesota Department of Taxation, and subsequently did tax and accounting work for a firm of certified public accountants in Minneapolis. In 1948 he entered private law practice and has been practicing in Minneapolis ever since. His practice consists mainly of tax and corporate matters.

The facts of his early encounters with the Hills and his existing relationship with Okay have already been stated. Ranta testified that when he first suggested to the Hills that one of his other

clients (Okay) was interested in entering into a business transaction with them, he specifically asked them if they wanted the same attorney to represent them as had represented them when they purchased the Cedar Avenue property and in their attempt at incorporating the business of Romans. According to Ranta, the Hills wanted to know whether separate representation was necessary. He told them it would not be absolutely necessary and advised them in very general terms "that there might be some developments with reference to it that it might be well for them to have their own counsel." According to Ranta, the Hills nonetheless consented to his dual representation.

The Hills' testimony on this point differs substantially from Ranta's. Roger Hill testified that at no time did Ranta ever advise him or his wife of any possible conflicts of interest that might arise as a result of his dual representation of the Hills and Okay. He further testified that Ranta advised them that it would be "convenient" if Ranta represented both the Hills and Okay, because he was more familiar with both situations.

Judith Hill's testimony was similar to that of her husband. She testified that sometime in June she called their former attorney to find out whether it was proper for an attorney to represent both sides. He indicated to her that it was very unusual, but declined to render any further opinion. Mrs. Hill also testified that she then went to Ranta and indicated that she and her husband wanted to be represented by another attorney. According to her testimony, Ranta told her that it was not unusual for an attorney to represent both parties to a transaction such as was being contemplated and that it would in fact "be to the benefit of all the parties involved" if he represented both the Hills and Okay. It was at this point, she testified, that the Hills agreed to Ranta's representing them.

There is no evidence in the record to show whether Okay approved of Ranta's dual representation.

Both the Hills and Kvasnicka testified that on more than one occasion they requested some written agreement or documenta-

tion from Ranta. Kvasnicka testified that he was present when Roger Hill requested a written agreement from Ranta. The Hills both testified that Ranta's response was always that an agreement would be forthcoming. No agreement or any evidence of indebtedness, however, was ever prepared. Ranta himself admitted that the Hills and Kvasnicka requested that the agreement be reduced to writing and that he assured them it would be done.

Ranta, while able to explain precisely the nature of the transaction, testified that he had two reasons for not reducing the agreement to writing. First, he believed there was the possibility that a written agreement would be more accessible to any judgment creditors the Hills might have than one that was merely oral. Second, he felt that the arrangements never stabilized to the point where it was practicable to reduce the terms to writing. He did admit that Okay received no benefit from the fact that the agreement was never reduced to writing, but asserted that Okay was fully protected by virtue of holding title to the building.

Kvasnicka and Ranta testified that Kvasnicka specifically requested that Okay be protected from claims of Romans' creditors, and that Ranta was instructed to ensure such protection. Kvasnicka testified that when he requested "some type of legal protection so no repercussions could be suffered by the Parent Company," he had no specific steps in mind, but rather was relying on Ranta's judgment. Ranta admitted understanding that he was to protect Okay from Romans' general creditors. Nonetheless, the jury found that Ranta approved and authorized the distribution of the two financial profiles.

Both the Hills and Ranta offered expert testimony from local attorneys on the issue of Ranta's negligence. The Hills' expert testified that, in his opinion, dual representation in a circumstance such as this would be likely to adversely affect the rights of the parties. Ranta's expert testified that, assuming a full disclosure of possible conflicts of interest and consent of all the par-

ties, such dual representation would be within the standards of practice of the local legal community. Both expert witnesses gave their opinions as to whether or not Ranta conformed with the standard of conduct of the community with respect to documenting the transaction between the parties. The Hills' expert testified that the standard of care, in his opinion, required that the transaction be documented. Ranta's expert testified that the decision as to whether and when to reduce an agreement to writing was a matter of judgment for an attorney.

Ranta argues that since no expert testimony was offered as to what standard of care pertained to the approval of the financial profiles by Ranta and whether or not he deviated from that standard, the jury was not competent to find that this act amounted to negligence. It is clear that this argument of insufficient expert testimony extends only to Okay's claim of negligence against Ranta. The financial profiles were not germane to the claim of negligence made by the Hills, whose allegations encompassed specifically Ranta's dual representation and failure to document the transaction. On these aspects, sufficient expert testimony was elicited. With this testimony in mind, the jury could and did evaluate Ranta's conduct. The jury was free to weigh the evidence, and that evidence fully supports the jury's finding of negligence on Ranta's part in the manner in which he represented the Hills.

Central to Okay's claim of negligence was Ranta's failure to adequately insulate Okay from Romans' creditors. It is difficult to imagine how this claim could not encompass the approval of the financial profiles.

None of our prior decisions in actions regarding legal malpractice have directly addressed the issue of the need for expert testimony in cases based on negligence. The cases collected in Annotation, 17 A. L. R. 3d 1442, indicate some states have adopted the same standard with respect to the need for expert testimony in legal malpractice cases that they have adopted in medical malpractice cases—that expert testimony is generally

necessary except where the matters in issue fall within the area of common knowledge and lay comprehension.

In cases of medical malpractice, this is also the standard applied in Minnesota. Generally, the plaintiff must introduce expert testimony as to the standard of care and the defendant doctor's departure from it. Failure to do so would leave only the jury's speculation as the basis for a verdict. Lhotka v. Larson, 307 Minn. 121, 238 N. W. 2d 870 (1976); Hestbeck v. Hennepin County, 297 Minn. 419, 212 N. W. 2d 361 (1973). However, such expert testimony is not necessary when the matters to be proven are within the area of common knowledge and lay comprehension. Hestbeck v. Hennepin County, *supra.*

Logic dictates that this same standard should be adopted in cases of legal malpractice. Expert testimony should be generally required to establish the standard of care applicable to an attorney whose conduct is alleged to have been negligent and further to establish that his conduct deviated from that standard. That general rule should be subject to the exception that such expert testimony is not necessary in cases where the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony.

Applying this rule to the instant case, because the jury unquestionably considered Ranta's approval of the financial profiles in determining his negligence (see discussion below), and because there was no expert testimony regarding the propriety of Ranta's conduct in approving the financial profiles, in order for the jury's finding to stand we must be able to state that the jury was competent to evaluate that conduct without the aid of expert testimony. See, Raymond v. Baehr, 282 Minn. 102, 163 N. W. 2d 54 (1968). In view of the evidence as a whole, we hold that the jury could properly evaluate that conduct.

The jury found as fact that Ranta approved the execution and dissemination of the financial profiles. The testimony was uncontradicted, and the court found that Okay had instructed Ranta to protect it from the claims of Romans' creditors. The impact

of the financial profiles is obvious to any layman. The Hills recognized, as did the suppliers who received the profiles, that the profiles meant Okay would share responsibility for the debts incurred with Romans. If that were not obvious, the profiles would not have been necessary. Expert opinion would add nothing to that conclusion.

Whether Ranta's conduct in approving the profiles was nullified by Kvasnicka's subsequent personal approval is a separate question relating to causation. The parties stipulated that on that issue the jury was competent to render a finding. We note, however, that in so acting, Kvasnicka was relying on advice given him by Ranta.

Ranta's further argument that there was insufficient proof of causation under the "but for" rule of causation of Christy v. Saliterman, 288 Minn. 144, 179 N. W. 2d 288 (1970); and Meagher v. Kavli, 256 Minn. 54, 97 N. W. 2d 370 (1959), is not well founded. That rule was enunciated with respect to the test of causation to be applied in the case of an attorney's negligence destroying his client's cause of action. The client-plaintiff is required to establish the value of what was lost through his attorney's negligence; i.e., that he had a meritorious cause of action originally. Such a rule is only common sense. The instant case, however, deals with more traditional concepts of proximate cause. There are no underlying causes which the plaintiff must establish.

In conclusion, it appears that the evidence was sufficient to support the jury's verdict as it pertained to Ranta's negligence. An attorney who undertakes to represent at the same time adverse parties in any type of legal relationship, whether contractual or otherwise, does not obligate himself to adhere to any higher duty or standard of care than if he endeavored to represent only one of those parties. On the other hand, he clearly owes no lesser duty to each of his cients, and he must protect the interests of each as zealously as if their interests were his sole responsibility. In undertaking to represent both the Hills and Okay,

Ranta placed himself in a position which, by its very nature, made it more difficult for him to conform to the required standard of practice in protecting his clients' interests. In the opinion of the jury, Ranta failed both clients. We must accept that judgment.

■ *Propriety of special verdict.*

On appeal, Ranta asserts that his counsel requested separate jury findings on each of the following five acts of negligence he contends he was charged with in the Hills' amended complaint and the cross-claim of Okay:

(1)  Representation of both parties to the Okay-Romans transaction without adequate disclosure of the potential conflicts of interest in such an arrangement;

(2)  Failure to prepare written documentation of the Okay-Romans agreement;

(3)  Failure to adequately insulate Okay from the claims of Romans' creditors;

(4)  Failure to adequately investigate the Hills' financial background;

(5)  Approval of the execution of the financial profiles.

Ranta contends that the trial court improperly refused to submit to the jury specifically requested interrogatories concerning these allegations.

The special verdict form proposed by Ranta's counsel to the trial court contained two separate interrogatories regarding negligence. One asked whether Ranta was negligent in failing to obtain written consent to his dual representation from his clients. The other asked whether he was negligent in failing to document the transaction between the parties. The trial court refused these requests, and instead presented to the jury, with appropriate instructions, one general interrogatory regarding Ranta's negligence and two questions on causation—one regarding the Hills' damages and the other regarding Okay's.

Pursuant to Rule 49.01, Rules of Civil Procedure, a trial judge

may decide to submit a special verdict to a jury, rather than a general verdict. Under prior Minnesota practice, the decision as to which form of verdict to use was controlled by the nature of the action, and a special verdict was available only in an action for the recovery of money and then only if the jury, in its discretion, decided to render such a verdict. Rule 49.01 liberalized that former practice by leaving it to the discretion of the trial court whether to submit the case on a special verdict or not. Wormsbecker v. Donovan Construction Co. 247 Minn. 32, 76 N. W. 2d 643 (1956). Not only does the trial court have the discretion to decide whether or not to use a special verdict, but it is possessed of broad discretion as to what form that special verdict is to take. Thielbar v. Juenke, 291 Minn. 129, 136, 189 N. W. 2d 493, 498 (1971), citing McDonnell v. Timmerman, 269 F. 2d 54 (8 Cir. 1959); 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann. p. 289. The Eighth Circuit Court of Appeals, in McDonnell v. Timmerman, 269 F. 2d 54, 58, observed that the formulation of the verdict by the court is a proper exercise of that discretion if the questions propounded fairly and adequately cover all of the issues of fact raised by the pleadings and proof. Such questions as are raised by the pleadings and evidence which are important to the judgment to be rendered must be submitted to the jury. Wormsbecker v. Donovan Construction Co. 247 Minn. 32, 47, 76 N. W. 2d 643, 653.

The rationale for this requirement that the special verdict encompass all questions of material fact is to ensure the parties their constitutionally guaranteed right to a jury trial. The questions submitted to the jury need not be questions of pure fact, but, in the discretion of the trial court, may be in the form of ultimate fact questions. See, Thielbar v. Juenke, 291 Minn. 129, 136, 189 N. W. 2d 493, 498, and cases cited therein. While in certain cases it may be more desirable to have the jury determine evidentiary rather than ultimate facts, Thielbar v. Juenke, *supra,* in negligence cases the jury may draw the inference from those facts as to whether or not the applicable standard of care has

been breached. Cooper v. Friesen, 296 Minn. 160, 207 N. W. 2d 742 (1973); Stenzel v. Bach, 295 Minn. 257, 203 N. W. 2d 819 (1973). See, generally, 13B Dunnell, Dig. (3 ed.) § 7048.

The issues of material fact which were raised by the pleadings and evidence adduced at trial appear to be these:

(1) What was the nature of the business transaction between the Hills and Okay?

(2) Was Ranta negligent in his representation of the Hills, and if so, what damages resulted from that negligence?

(3) Was Ranta negligent in his representation of Okay, and if so, what damages resulted from that negligence?

As to the first issue, the court and the parties were in agreement as to that portion of the special verdict which covered the nature of the transaction itself. All of the suggested special verdict forms were in substantial harmony with that portion of the verdict the court finally submitted dealing with this issue, and no objections to this portion of the verdict are found in the record. The issue is raised on appeal only insofar as the parties challenge the sufficiency of the evidence to support the jury's findings.

The issue of Ranta's negligence with respect to the Hills was not that he represented both them and Okay and not that he failed to document their transaction, but rather that, as his clients, he failed to protect their interests. Like failure to yield the right of way, excessive speed, and improper lookout in an ordinary automobile negligence case, Ranta's dual representation and his failure to document the transaction were merely evidentiary facts which provided a basis for the jury's finding of negligence. As such, the trial court did not err in refusing to submit to the jury the individual questions of whether Ranta was negligent because of his dual representation and his failure to reduce the agreement to writing.

The same analysis applies to the claim that Ranta negligently failed to protect the interests of Okay. However, in this regard, there is the additional issue of the disputed financial profiles.

On appeal, Ranta's counsel argues that, despite the jury's finding that Ranta approved the execution and dissemination of the profiles, there was no finding by the jury that this constituted negligence and that the absence of such a specific finding is reversible error. It is evident that Ranta's failure to protect Okay's interests from the claims of Romans' creditors subsumes his approval of the financial profiles. Thus, in determining whether or not Ranta was negligent in his representation of Okay, the jury considered the evidentiary facts of his dual relationship, his failure to document the transaction, and his approval of the financial profiles, and drew the conclusion of ultimate fact that Ranta's conduct was negligent. As the discussion above shows, there was sufficient evidence presented on all of these individual fact issues to enable the jury to make this determination. The trial court, in its scheme of presentation of the case to the jury, asked the jury whether Ranta was negligent, and if so, whether that negligence caused Okay damages in the form of expenses in defending the lawsuits brought by Romans' creditors. If the answer to both questions was "yes," then the other damages claimed by Okay from Ranta, namely indemnification for the actual amounts claimed by the creditors of Romans, logically follow.

For these reasons we feel that a separate finding by the jury that Ranta was negligent in approving the financial profiles was not necessary. Additionally, the record reveals that the trial court was never requested to have the jury make a specific finding as to the character of Ranta's conduct in approving the financial profiles. The interrogatory submitted by the court regarding this act was substantially the same as that requested by Ranta. It must be kept in mind that the facts of Ranta's dual representation and his failure to document the transaction were not contested, and it was not necessary for the jury, in making the ultimate determination of negligence, to find these evidentiary facts. Whether or not Ranta approved the financial profiles was, on the other hand, disputed. By having the jury indicate its find-

ing on this point, the court was provided with verification of the jury's determination of this evidentiary fact.

We believe that it might well have been preferable to ask the jury separate questions concerning Ranta's negligence with respect to the Hills and with respect to Okay. Conceivably the jury could have found that Ranta was negligent in his representation of one party but not of the other. However, this difficulty is overcome by the separate questions relating to damages suffered by each party because of Ranta's negligence. It does not appear that the jury was confused by the formulation of the interrogatories by the trial court, and their determination of the material issues can readily be ascertained from the answers made to those interrogatories.

Similarly, although it might have been appropriate for the trial court to present to the jury an interrogatory regarding the comparative negligence, if any, of the other parties, such an interrogatory is not required under Minn. St. 604.01, subd. 1, in the absence of a demand from one of the litigants. The record fails to reveal such a demand.

The trial court fully and adequately covered the material facts of negligence and causation without itemizing the "acts" of negligence alleged. We cannot substitute our discretion for that of the trial court.

Finally, Ranta argues that the trial court improperly failed to distinguish, or have the jury distinguish, between his conduct as an attorney and his conduct as a business advisor. The record fails to support Ranta's allegation that he had acted in the capacity of a business advisor. First, it appears that Ranta's culpable conduct was rendered entirely in a legal context. The claims made against him are not for bad business judgment but rather for legal malfeasance, specifically his failure to properly document the transaction and to properly advise as to the legal effects of certain other documents. Second, there is nothing in the record to suggest that counsel for Ranta ever requested that such a distinction be drawn, either by the jury or by the court.

The jury very clearly was instructed by the court as to the proper standard by which an attorney's conduct must be judged, and it had only that standard and not some "business judgment" rule to apply. We find this argument to be without substantial merit.

■ *Propriety of trial court's findings.*

After the jury returned its special verdict, the trial court adopted those findings as its own and made certain additional findings. Ranta asserts that those supplemental findings were improperly made, in that they decided questions of fact which should have been determined by the jury and were contrary to the findings which the jury did make.

Under Rule 49.01, Rules of Civil Procedure, the trial court has the authority to make such additional findings supplementing a special verdict as are necessary to render a judgment. Ranta's argument regarding the court's findings is premised upon the contention that the court improperly submitted the case to the jury. We have rejected this contention. And, if the trial court properly submitted the issues to the jury, the only question which remains is whether there is evidentiary support for those findings of the court which encompass facts not expressly found by the jury. In examining the court's findings with an eye toward the record, it cannot be said that they were clearly erroneous. The court's findings merely add necessary, consistent details to the findings of the jury and are amply supported by the evidence.

■ *Propriety of trial court's conclusions of law.*

Ranta asserts that the trial court's conclusions of law were improperly drawn. We find merit in certain of his contentions and therefore must reverse the lower court's judgment in part.

Damages were awarded in the amount of $30,000 to the Hills from both Okay and Ranta. This amount represented the purchase price agreed to by the Hills and Okay for the Cedar Avenue building and its furnishings. The jury specifically found that this amount had not been paid to the Hills by Okay. Additionally, the court awarded Okay judgment against Ranta for all sums

it had invested in Romans. We feel that both awards, with respect to Ranta, were improper. Ranta's acts or omissions in no way affected Okay's obligation to pay the Hills the agreed-upon purchase price. Similarly, with respect to the sums invested by Okay, whether they be characterized as loans or contributions to capital, Okay clearly understood the risk involved in making that investment and deemed itself secure by virture of the title it had obtained to the Cedar Avenue property. Ranta's conduct in no way increased or otherwise affected this liability, and the responsibility for the loss sustained, if any, is solely Okay's.

The Hills were awarded indemnity from both Okay and Ranta for the judgments entered against them by Romans' creditors, including costs and attorneys fees incurred in defense of those claims. Okay was awarded indemnity from Ranta for the settlement and payment of claims made by Romans' creditors which Okay was obligated eventually to satisfy, plus its costs and attorneys fees incurred in defending and settling those claims.

In Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960), we explained the nature of the remedy of indemnity. While traditionally indemnity has been viewed as a right arising out of contract, the award of indemnity should follow traditional concepts of equity. Sorenson v. Safety Flate, Inc. 298 Minn. 353, 216 N. W. 2d 859 (1974); Hendrickson v. Minnesota Power & Light Co. *supra.*

The law implies a promise of indemnity from a principal to his agent for any damages resulting from the acts of the agent in the good faith execution of that agency. See, generally, 1A Dunnell, Dig. (3 ed.) § 208. The jury found as a fact that Okay had purchased Romans from the Hills. The trial court found that the Hills continued to operate the business of Romans as employees of Okay after that transaction. The trial court properly concluded that the Hills were entitled to indemnity from Okay against the claims of Romans' creditors, because they were its employees. The Hills are not, however, entitled to indemnity for any of these amounts from Ranta. This is by virtue of the fact

that, despite Ranta's negligence, it was ultimately determined that the transaction between the Hills and Okay was a sale, as the Hills contended. In that respect, at least, they suffered no compensable damages and can claim no indemnity from Ranta.

Indemnity may also be granted where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged. Sorenson v. Safety Flate, Inc. *supra*; Hendrickson v. Minnesota Power & Light Co. *supra*. In the instant case, the claims against Okay for the sums owed Romans' creditors are a result of Ranta's negligent conduct, and indemnity was properly awarded to Okay against Ranta for those amounts. This is to be distinguished from our refusal to award Okay indemnity for the sums invested. The loss of the funds advanced was a risk Okay knowingly assumed when it agreed to become involved with Romans, whereas the liability Okay faces from Romans' creditors was a risk that was not willingly or knowingly taken by Okay, but rather was the result of Ranta's negligence. Thus, while the possible loss of the investment was anticipated by Okay, clearly the additional liability was not.

There remains for consideration only the propriety of the trial court's award of attorneys fees to the Hills from both Okay and Ranta and to Okay from Ranta.

When a party defends against a claim which is the responsibility of another party from whom he may recover indemnity, tender of the defense of that action to the other party is generally a condition precedent to obtaining indemnification for attorneys fees incurred in that defense. Sorenson v. Safety Flate, Inc. 306 Minn. 300, 235 N. W. 2d 848 (1975). The purpose of this rule is to provide the party from whom indemnity is sought the opportunity to handle its own defense. In this case it does not appear from the record that the Hills made any tender to Okay of the defense of the claims made against them, and they are thus precluded from claiming indemnity from Okay for the amounts of their attorneys fees in defending those claims.

A different standard is applied, however, with respect to the award of attorneys fees from Ranta. Attorneys fees and expenses are not generally included in the measure of recoverable damages for negligence. 5B Dunnell, Dig. (3 ed.) § 2523. An exception is recognized, however, when the attorneys fees and expenses claimed are incurred in other litigation which is necessitated by the act of the party sought to be charged. Prior Lake State Bank v. Groth, 259 Minn. 495, 108 N. W. 2d 619 (1961) ; Tarnowski v. Resop, 236 Minn. 33, 51 N. W. 2d 801 (1952); Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964 (1924). In each of those cases, the plaintiff, because of the tortious conduct of the defendant, was compelled to enter litigation with a third party to protect his rights. Thereafter, the plaintiff in each case sued the defendant to recover the costs and attorneys fees incurred in the prior litigation. Recovery was allowed. Applying that rule to the instant case, it is clear that both the Hills and Okay should be entitled to recover from Ranta, as a part of the measure of damages they suffered due to his negligence, attorneys fees incurred in defending against the claims of Romans' creditors. The tender-of-defense requirement does not apply, since in no event would Ranta have been liable directly to the third parties.

We thus reverse the judgment against Ranta and in favor of the Hills for the $30,000 representing the purchase price of Romans and the award of indemnity to the Hills from Okay for their attorneys fees. Additionally, we reverse that portion of the judgment which awards Okay damages from Ranta for the purchase price and the sums it invested in Romans. The remainder of the judgment which awards the Hills indemnity from Okay for the claims of Romans' creditors and Okay indemnity from Ranta for those claims, and which awards both the Hills and Okay their attorneys fees in defending against those claims from Ranta, is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

### APPENDIX
### File No. 699323
### FINDINGS OF FACT, CONCLUSIONS OF LAW &
### ORDER FOR JUDGMENT
\* \* \* \* \*

Issues of fact were submitted to the jury under Special Verdict and they returned special written findings. The issues submitted to the jury and the answers of the jury thereto were as follows:

Question No. 1: Was the agreement between Okay Construction Company, Inc., and Roger Hill and Judith Hill a loan transaction, or was the agreement for a sale of the business?

loan transaction ————————

sale of business —— sale

Question No. 2: If your answer to Question No. 1 was that the agreement was a loan transaction, then answer these questions:

   (a)   Did Roger Hill have a duty to return the inventory held by him in April of 1973?

       Answer: (unanswered)

   (b)   If your answer to (a) was yes, what damage, if any, did Okay Construction Company, Inc. sustain by reason of his failure to do so?

       $———— (unanswered)

Question No. 3: If your answer to Question No. 1 was that the agreement was for a sale of the business, then answer this question:

Did the money advanced and used by the Hills constitute payment for the building?

Answer: No

Question No. 4: Did E. E. Ranta approve the financial profiles (Exhibits K and L) and authorize their distribution among the electric and furniture suppliers?

Answer: **Yes**

Question No. 5: Did Felix Kvasnicka approve the financial profiles (Exhibits K and L) and authorize their distribution among the electric and furniture suppliers?

Answer: Yes

Question No. 6: Did Roger Hill misrepresent the approval of the financial profiles (Exhibits K and L) by E. E. Ranta to Felix Kvasnicka?

Answer: No

Question No. 7: Did E. E. Ranta fail to exercise the care of a reasonably prudent attorney in this community under like circumstances?

Answer: Yes

Question No. 8: If your answer to Question No. 7 was yes, was such negligence a direct cause of the damages for expenses incurred by the Hills in the defense of lawsuits brought by creditors?

Answer: Yes

Question No. 9: If your answer to Question No. 7 was yes, was such negligence a direct cause of the damages for expenses incurred by Okay Construction Company, Inc., in the defense of lawsuits brought by creditors?

Answer: Yes

The Court adopts said findings as Findings of Fact, and upon all of the records, files and proceedings herein, makes the following additional Findings of Fact:

## FINDINGS OF FACT

1. That on or about August of 1972 defendant Okay Construction Company, Inc., purchased the business previously owned and operated by the plaintiffs (said business hereinafter referred to as Romans) at a purchase price of Thirty Thousand and 00/100 ($30,000.00) Dollars consisting of plaintiffs' equity in certain real and personal property. That defendant Okay Construction Company, Inc., has not paid to plaintiffs any part of said purchase price. That the plaintiffs' first demand for payment thereof was part of plaintiffs' Complaint herein, the same

having been served on defendant Okay Construction Company, Inc., on October 1, 1973.

2. That as part of the terms of said purchase, defendant Okay Construction Company, Inc., granted the plaintiffs and each of them an option to repurchase said business including the real and personal property. That plaintiffs have not exercised said option and have waived their rights thereunder and that said option has been effectively terminated.

3. That plaintiffs continued after August of 1972 to operate Romans as employees of defendant Okay Construction Company, Inc., until January of 1975 at which time the operation of said business was terminated.

4. That at all times herein material defendant E. E. Ranta as an attorney at law represented both the plaintiffs and defendant Okay Construction Company, Inc., in the negotiations for the purchase of the plaintiffs' business and as legal counsel for both the plaintiffs and defendant Okay Construction Company, Inc., in the business relationships which developed and existed between them and in matters relating to the operation of Romans.

5. That Okay Construction Company did not intend to incur any liability to past, present or future creditors of Romans and instructed Esko Ranta as their counsel to protect them accordingly.

6. That Okay Construction Company did not understand that they were purchasing the entire business of Romans but believed that they were making loans and taking title to the building and personal property as security therefor. That Esko Ranta negligently failed to advise them of such fact.

7. That defendant E. E. Ranta did not document the business relationship between the plaintiffs and defendant Okay Construction Company, Inc. That defendant E. E. Ranta did not prepare a promissory note or other written document evidencing defendant Okay Construction Company's indebtedness to plaintiffs for the purchase of Romans as set forth in Finding No. 1 above

other than preparing and having executed an assignment of a contract for deed and a quit claim deed of the realty involved and a bill of sale for the personal property. Further, as attorney for the plaintiffs and defendant Okay Construction Company, Inc., defendant E. E. Ranta approved certain financial profiles (Exhibits K and L) and authorized their distribution to certain suppliers of audio-stereo equipment and related items.

8. That defendant Okay Construction Company, Inc., provided substantial capital for the operation of said business, the exact amount to be determined in supplemental Findings of Fact, Conclusions of Law and Order for Judgment.

9. That in excess of thirty (30) lawsuits have been commenced by certain creditors of Romans for merchandise purchased by Romans for resale. That said lawsuits have been brought against both the plaintiffs and defendant Okay Construction Company, Inc., with resulting counterclaims and cross-claims between said parties. That the plaintiffs and defendant Okay Construction Company, Inc., have incurred certain costs and expenses in the defense of said lawsuits, a more detailed Finding to be included in a supplemental Findings of Fact, Conclusions of Law and Order for Judgment.

## CONCLUSIONS OF LAW

1. That Plaintiffs and each of them are entitled to judgment against Defendant Okay Construction Company, Inc. and Defendant E. E. Ranta in the sum of Thirty Thousand and 00/100 ($30,000.00) Dollars plus simple interest at the rate of six (6%) per cent from and after October 1, 1973.

2. That the Plaintiffs and each of them are entitled to indemnity from Defendant Okay Construction Company, Inc. and Defendant E. E. Ranta for all costs and expenses, including attorneys fees, incurred by the Plaintiffs in the defense of creditors' suits brought against the Plaintiffs, the amount of which will be set forth in supplemental Findings of Fact, Conclusions of Law and Order for Judgment to be filed herein.

3. That Plaintiffs are further entitled to indemnity as against Defendant Okay Construction Company, Inc. and Defendant E. E. Ranta for any judgments which may be entered against Plaintiffs individually as a result of said creditors' suits.

4. That Defendant Okay Construction Company, Inc. is entitled to indemnity from Defendant E. E. Ranta for all costs and expenses including attorneys fees incurred in connection with the creditors' suits, the amount of which will be set forth in supplemental Findings of Fact, Conclusions of Law and Order for Judgment to be filed herein.

5. That Defendant Okay Construction Company, Inc. is entitled to indemnity from Defendant E. E. Ranta for all money paid or to be paid on behalf of Defendant Okay Construction Company, Inc. in the settlement and payment in connection with the claims of creditors as set forth in the creditors' suits.

6. That Defendant Okay Construction Company, Inc. is entitled to indemnity from Defendant E. E. Ranta for all money expended by Defendant Okay Construction Company, Inc. in connection with Defendant Okay Construction Company's involvement with the business known as Romans, the amount of which will be set forth in supplemental Findings of Fact, Conclusions of Law and Order for Judgment and upon payment thereof by Defendant E. E. Ranta, Defendant E. E. Ranta shall be entitled to an assignment of Defendant Okay Construction Company's interest in the Real property to be more specifically identified in supplemental Findings of Fact, Conclusions of Law and Order for Judgment.

ORDER FOR JUDGMENT

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:
/s/ JONATHAN LEBEDOFF
Judge of District Court

Dated: Aug. 21, 1975.