Milbert KREIN, et al., Appellants,

v.

Douglas Wallace RAUDABOUGH, et al., Respondents,

Remke, Inc., et al., Defendants,

General Motors Corporation, Pittston Company, et al., Intervenors, Respondents.

No. C5–86–1562.

Court of Appeals of Minnesota.

May 19, 1987.

Clint Grose, Grose, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, for appellants.

Paul Donlin, Donlin, McBride & Goetteman, St. Paul, for respondents Douglas Wallace Raudabough, et al.

Kent B. Hanson, Bowman & Brooke, Minneapolis, for respondent General Motors Corp.

Helen Dovolis, Alex B. Leibel & Associates, Minneapolis, for respondents/intervenors Pittston Company, et al.

Heard, considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

Milbert Krein appeals the jury's damage award of $2,717 and its rejection of his design defect claim against General Motors Corporation (GMC) in his negligence and strict liability tort action.[1] We affirm.

## FACTS

On August 26, 1977, Douglas Raudabough drove out of a parking lot and collided head-on with an armored truck driven by Brinks employee Milbert Krein. In exiting the lot, Raudabough had accelerated to 25–30 miles per hour, crossed over into the oncoming traffic lane and hit Krein, who had slowed to approximately 15 miles per hour to enter the lot. Krein applied his brakes, but could not avoid the accident.

The impact propelled Krein forward from his seat against the truck interior, causing bruises and abrasion wounds. He was taken to North Memorial Hospital shortly after the accident and examined by his family doctor.

The doctor took x-rays, treated Krein's abrasions and sent him home. In the emergency room medical report, the doctor specifically noted "no objective signs of injury."

Krein recuperated until September 26, 1977, when he returned to work despite continuing pain in his knee and back. In

---

1. Milbert Krein's wife, Patricia Krein, is a co-plaintiff and joint appellant alleging damages for loss of consortium. For economy of reference Milbert Krein is singularly denoted as appellant.

March 1980 he consulted a knee specialist, Dr. Salovich, who examined him and took a complete medical history. Dr. Salovich noted Krein had been injured in a prior truck accident resulting in persistent problems of weakness and locking in his knee, which were aggravated by the 1977 injury. Salovich concluded that Krein had "persistent left knee symptomatology for the last 8 years following trauma."

Dr. Salovich operated on Krein's knee in March 1980. After a lengthy recuperation, Krein returned to work on September 2, but left again on November 6, still experiencing pain. On January 7, 1981, he had a second knee operation. Although he continued to experience knee pain, his doctors told him it could not be cured. On April 26, 1981, Brinks' doctors refused to recertify him as physically able to return to work because of the condition of his knee. Brinks terminated Krein in May 1981.

Krein brought this action to recover the damages he sustained in the 1977 accident. He alleged negligence against Raudabough and strict liability in tort against Remke, Inc., and General Motors Corporation (GMC) for designing and manufacturing the armored truck in a defective condition. Under a theory of "crashworthiness" or "second collision," Krein alleged that this defect significantly enhanced his injuries.

The armored truck was made by Remke, a now-bankrupt Michigan corporation, and built on a GMC "chassis and short sill cowl." The chassis and cowl include the frame and the top portion of the front part of the truck, forward of the two front doors (engine, hood, dashboard and steering column):

Krein also named the City of Coon Rapids, d/b/a Coon Rapids Liquor Store No. 4, and Ekmer Corporation as defendants, but Ekmer was dismissed before trial, and the City of Coon Rapids negotiated a *Pierringer* release.

Krein alleged permanent injuries to his lower back, left knee and sciatic nerve in his left leg and sought damages exceeding $700,000 for past and future medical expenses, loss of earning capacity and the cost of past and future attendant care.

The trial began on May 19, 1986, and lasted five weeks. Raudabough admitted liability for the accident, but strongly contested the nature, extent and causation of Krein's injuries. The jury returned a special verdict finding Raudabough liable for negligence in causing the accident and Remke liable for negligence in assembling the truck in a defective condition unreasonably dangerous because of its design. The jury awarded Krein $2,717 in damages, 90 percent apportioned to Raudabough and 10 percent to Remke. The jury found that GMC was not negligent in the design or manufacture of the chassis and cowl.

Krein brought post-trial motions for judgment notwithstanding the verdict, additur and a new trial. These motions were denied, and Krein appeals.

### ISSUES

1. Is the jury verdict finding GMC not negligent and not strictly liable in the design and manufacture of the chassis and short sill cowl supported by the evidence?

2. Is the jury's damage award supported by the evidence?

3. Were the trial court's jury instructions and verdict interrogatories proper?

4. Did the trial court abuse its discretion by admitting a test performed by GMC or in its rulings on other evidentiary or procedural objections?

## ANALYSIS

### I

In design defect cases, Minnesota courts apply a "reasonable care" balancing test, which focuses on the conduct of the manufacturer in evaluating whether its choice of design struck an acceptable balance among several competing factors. *Bilotta v. Kelley Co., Inc.,* 346 N.W.2d 616, 622 (Minn. 1984). These factors include:

(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207, 212 (Minn.1982) (citing Wade, *Strict Tort Liability of Manufacturers,* 19 Sw. L.J. 5, 17 (1965)).

At trial Krein attempted to establish the dangerous nature of the cowl, GMC's prior knowledge of the defect and the existence of a superior, alternative design. Krein's claim of defect is predicated on the assumption that the lower instrument panel of the cowl does not have the capacity to absorb energy in a crash.

Krein called three experts; none of these experts had automobile design experience, performed any tests to determine the cowl's energy-absorbing capabilities, or presented any evidence to support the conclusory assertion that the cowl design had "force localizing protrusions" which increased the risk of passenger injury. None

of Krein's experts could testify to the gauge of metal used in the cowl, and one acknowledged he had drawn his conclusions simply from having looked at photographs.

GMC produced engineers who testified on the reasonableness of the cowl design, its energy-absorbing capacity, and that sheet metal was the favored material for occupant restraint purposes at the time the cowl and chassis were built. Although GMC had not performed any safety tests on the cowl prior to the accident, there was evidence the GMC design had an excellent safety record.

Krein's claim that GMC knew the instrument panel was dangerous is not well supported. Krein relies on a statement extracted from a GMC Automotive Safety Seminar report which states that driver injuries will be reduced by the design of an energy-absorbing instrument panel. Krein claims this proves GMC had knowledge of a defect and should be held strictly liable. This evidence is not sufficient to establish conclusive knowledge of a general defect or a specific defect in this particular cowl. The jury also heard evidence that no accidents had been reported as a result of the panel design. They were permitted to view a separate publication in which GMC engineers recognized the increased use of plastics for instrument panels, but concluded that sheet metal was a better material because "it will pocket to conform to the body area impacting it, improving load distribution, and can be designed to yield at controlled rates without fracturing or rebounding."

■ Krein's evidence of a superior, alternative design consisted of a photograph taken from the GMC Automotive Safety publication. The panel illustrated by the photograph was designed solely to reduce driver fatigue. Aside from the photograph itself, Krein presented no evidence that this panel had greater energy-absorbing capability than the actual design. Although evidence of a safer, alternative design is not necessarily required in all products liability cases, such evidence is relevant to, and certainly may be an important factor

in, the determination of whether the product was unreasonably defective. *See Kallio v. Ford Motor Co.*, —— N.W.2d —— (Minn. Apr. 10, 1987).

■ The evidence as a whole does not conclusively show that the cowl was dangerous, that GMC knew it was dangerous, or that there was a superior, alternative design. The standard to be applied in determining the propriety of the trial court's granting or denying a motion for judgment notwithstanding the verdict is whether there is any competent evidence tending to sustain the verdict. *Bluewater Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983). Judging the weight and credibility of conflicting expert testimony is a matter for the jury, *Shymanski v. Nash*, 312 Minn. 304, 308, 251 N.W.2d 854, 857 (1977); *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 392 (Minn.1977). We have no difficulty concluding the jury could justifiably find GMC's cowl was not designed in an unreasonably defective manner. The evidence supports the verdict.

## II

■ The jury found Raudabough and Remke were responsible for Krein's injuries and awarded him $717 as recovery for his actual costs, plus $2,000 for pain and suffering. Krein, who requested over $700,000 in damages, argues the award is perverse.

Almost half the damages Krein requested were for attendant care. Two of Krein's doctors testified he does not need full-time skilled nursing care. Krein's wife testified she spends an average of only two hours per day caring for him. She also admitted he travels alone in the car without assistance.

Krein's claim for loss of future earnings is also subject to question. Krein testified he had planned to retire at 62, his age at the time of trial. Nonetheless, he requested the jury award him lost future earnings up to age 70.

The primary evidentiary deficiency in Krein's damage claim is causation. Although the record supports Krein's claim of physical ailments, the evidence points to causes other than this accident. At the time Krein claimed disability from this accident, he underwent hospital treatment for a number of other ailments—heart attack, gall bladder surgery and hypertension from alcohol abuse. He has a history of chronic arthralgia (pain in the joints), for which he has received anti-inflammatory shots for over ten years. One examining orthopedist diagnosed his post-accident knee problems as arthritis.

The record also contains strong evidence that the knee problems pre-existed the accident and were caused by Krein's October 28, 1971, accident. The 1971 accident occurred when the truck in which he was riding rolled over. Krein fractured three vertebrae and bruised his legs, particularly his left leg, causing back spasms and pain. Krein testified he did not injure his knee in the 1971 accident, but that his current disability arose entirely from the 1977 head-on collision. The numerous medical reports from his different doctors suggest otherwise. Each report, which summarized his prior medical history, pointed to the 1971 accident as the initial trauma and the 1977 accident as only an aggravation. Several reports show Krein complained of a continuing "locking and buckling" sensation in his left knee after the 1971 accident.

In reviewing the sufficiency of an award, the appellate court must consider the evidence in the light most favorable to the verdict. The award should be set aside only if it is manifestly and palpably contrary to the evidence. *Levienn v. Metropolitan Transit Commission*, 297 N.W.2d 272, 273 (Minn.1980). Although the award of damages in this case is substantially below the claim, the evidence indicates Krein's present physical condition did not arise solely or primarily from the 1977 accident. There is evidence to support the jury's limitation of damages.

## III

The liability instructions given by the court were taken from the Jury Instruction Guide, 4 *Minnesota Practice*, CIV JIG III, 117 (Proposed Official Draft 1986). Krein

proposed that the court give an instruction on GMC's failure to warn of the cowl's dangerous nature. The trial court refused, stating Krein had not established a causal link between GMC's lack of warning and his injury, citing *Greiner v. Volkswagenwerk Aktiengesellschaft*, 429 F.Supp. 495 (E.D.Pa.1977).

■ Defective design and failure to warn are separate types of strict liability claims. *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 374 (Minn.Ct.App.1985); *see Bilotta v. Kelley Co., Inc.*, 346 N.W.2d at 622. A strict liability action for failure to warn can be brought even when the product is determined not to be defective, *Independent School District No. 14 v. Ampro Corp.*, 361 N.W.2d 138, 143 (Minn.Ct.App. 1985), *pet. for rev. denied*, (citing *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 897 (Minn.1978)), but to establish the claim, the manufacturer's failure to warn must be the proximate cause of the plaintiff's injury. *Waite v. American Creosote Works, Inc.*, 295 Minn. 288, 291, 204 N.W.2d 410, 412 (1973).

■ Krein presented no evidence at trial that he would have acted differently had GMC provided a warning. Although this may not be determinative on the issue of failure to warn, *Kallio*, —— N.W.2d at ——, there is no evidence which would reasonably tend to prove that GMC's failure to warn in this case proximately caused Krein's injuries. The trial court properly refused to instruct the jury on that claim. *See Oltmans v. Orthopaedic and Fracture Clinic, P.A.*, 278 N.W.2d 538, 541 (Minn.1979). The trial court fairly laid down the law of the case in a clear manner; the instructions were proper. *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 916 (Minn.1979).

Krein did not object to the special verdict form at trial and has waived his right to object on appeal. *Thielbar v. Juenke*, 291 Minn. 129, 137, 189 N.W.2d 493, 498 (1971).

### IV

Two months before trial, on May 3, 1986, GMC performed a test for the purpose of rebutting the deposition testimony of one of Krein's experts. GMC notified Krein's attorney of the test in a letter dated May 6, 1986, but refused to disclose results or further information because the test was for rebuttal and not subject to discovery. Minn.R.Civ.P. 26.02. Krein did not respond to the letter.

In prior discovery GMC acknowledged that no tests had been conducted on the crashworthiness of the short sill cowl. When GMC introduced the test at trial, Krein claimed unfair surprise and objected to its admission because it had not been disclosed under Minn.R.Civ.P. 26.05 (requiring that a party supplement its discovery responses by disclosing any new information or testimony upon which it might rely at trial). The trial court admitted the test over Krein's objection.

■ A trial court has discretion in ruling on the admissibility of evidence. *Lines v. Ryan*, 272 N.W.2d 896, 902 (Minn.1978). The trial court held GMC's May 6 letter amounted to sufficient disclosure and that any unfair surprise came from Krein's failure to request additional information at the time he received the letter. The trial court's ruling is within its discretion.

We also find no merit to Krein's objections to several other trial court rulings. The court properly refused to allow Krein to submit evidence at trial on the issue of the weight of the truck's cargo, in response to a contradiction which arose during discovery. The trial court's refusal to allow Krein's attorney to argue from an exhibit during closing argument was not error, because the exhibit had properly been excluded from evidence at trial. Similarly, we do not find an abuse of discretion in the trial court's permitting GMC's attorney to read portions of the trial transcript during his closing argument. Krein's attorney was free to balance any improper focus when he made his own closing argument to the jury.

■ Finally, Krein was not unfairly prejudiced when the trial court refused to adjourn early on the afternoon of June 18 so his attorney could deliver his closing argument uninterrupted the following morning.

The court allowed Krein's attorney to choose between staying late to finish the argument or taking an overnight recess and concluding his argument the following morning. He chose to recess.

The appellate court will not interfere with the exercise of discretion on the part of the district court except in cases where such discretion is clearly abused. *O'Brien v. Kemper*, 276 Minn. 202, 212, 149 N.W.2d 487 (1967). Each of these rulings is an acceptable exercise of the trial court's discretion and did not result in unfair prejudice.

### DECISION

The trial court did not abuse its discretion in denying Krein's post-trial motions for a new trial, additur and judgment notwithstanding the verdict. The verdict is reasonably supported by the evidence.

Affirmed.