# PRIOR LAKE STATE BANK v. LILLIAN GROTH, ADMINISTRATRIX OF ESTATE OF A. P. GROTH.

108 N. W. (2d) 619.

March 10, 1961—No. 37,967.

496

*A. H. Markert, Robins, Davis & Lyons,* and *Sidney Feinberg,* for appellant.

*Julius A. Coller II* and *Durham, Swanson & Lasley,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Prior Lake State Bank, referred to herein as the bank, against Lillian Groth, as administratrix of the estate of A. P. Groth, deceased, for money expended by the bank in litigation with National Surety Corporation, referred to herein as the surety company, upon a bond furnished the bank to cover its employees. The decedent, A. P. Groth, had served the bank as its cashier while this bond was in effect. He died in May of 1954.

In the fall of 1951, Federal Deposit Insurance Corporation, in examining the bank's records, uncovered shortages in the bank's funds which were subsequently traced to Groth. At the suggestion of Federal Deposit Insurance Corporation, the bank thereupon employed Harold E. Sandahl, a certified public accountant, to audit its accounts, determine the shortages therein, and ascertain whether Groth was responsible therefor. The audit disclosed that shortages were substantial and due to Groth's misappropriations. The bank thereupon demanded that the surety company reimburse it for such loss under the bond. The surety company denied liability, and in consequence the bank retained counsel and instituted an action in the District Court of Hennepin County against the surety company to recover for the shortages. In that action the bank obtained judgment against the surety company for $15,470.14, plus interest and costs. The surety company appealed from denial of its motion for a new trial and this court affirmed the district court's decision with some slight modification. Prior Lake State Bank v. National Surety Corp. 248 Minn. 383, 80 N. W. (2d) 612, 57 A. L. R. (2d) 1306. The judgment was

thereupon paid and satisfied by the surety company, which then filed a claim therefor against the estate of A. P. Groth.

In the instant case the bank sought recovery of the expenditures required for auditing services rendered in discovering the shortages and for legal services required in obtaining judgment against the surety company. At the trial a stipulation was submitted by the parties to the effect that the judgment in the prior action was res judicata in so far as it determined that there had been a misappropriation of $15,470.14 of the bank's funds by Groth; and that a judgment for such amount and interest in the sum of $4,239.24, plus costs and disbursements, had been entered in favor of the bank against the surety company and had been paid and satisfied by the latter.

At the trial of this action, the bank submitted testimony of Mr. Sandahl as to the services which he and his associates had rendered in conducting the audit described and in tracing responsibility for the shortages discovered. He testified that the reasonable value of such services was $6,095 and that this amount had been paid to him by the bank. The bank also submitted the testimony of Richard Converse, its attorney in the prior action, as to the services rendered therein by him and his associate, Mr. A. H. Markert; that the reasonable value thereof was $6,497.79; and that the bank had paid one-half of this amount to him and one-half of it to Mr. Markert.

In its findings the trial court determined the facts with reference to the prior litigation and the judgment entered therein, but further found:

"That the decedent, A. P. Groth, in no way participated in bringing about the contractual relation between the Prior Lake State Bank and the National Surety Corporation herein referred to, nor did he participate in any manner in the decision on the part of the National Surety Corporation to deny the claim of the plaintiff bank which was made under and by reason of the terms of said contract; that the decedent, A. P. Groth, could not reasonably foresee the decision of the National Surety Corporation to deny the claim, assuming that decedent, A. P. Groth, was aware of the existence of the indemnity contract.

\* \* \* \* \*

"That plaintiff incurred the sum of $14,396.54 for legal fees, auditing fees, court costs, and other expenses in connection with the preparation and trial of said action in the District Court of Hennepin County, and the appeal to the State Supreme Court."

In its conclusions the trial court determined:

"That the misappropriation of funds belonging to the Prior Lake State Bank by A. P. Groth was not the actionable cause of the expense of litigation, attorneys' fees, and auditing expense incurred by the plaintiff, Prior Lake State Bank, in its action against the National Surety Corporation.

"That expenditures by plaintiff in connection with the investigation, trials and appeals against the National Surety Corporation were incurred by reason of the disagreement between the plaintiff and said National Surety Corporation as to the terms and conditions of the surety bond in question and the amount involved and not otherwise.

"That plaintiff has failed to prove a cause of action against the defendant herein, and the defendant is entitled to judgment with its costs and disbursements."

In a memorandum attached to its findings, the trial court stated:

"* * * This claim on the part of the bank against the surety corporation was met by a refusal to acknowledge the obligation giving several reasons for such refusal. Some of these reasons were on the basis of limitations as to the time for filing, and part of it on the ground that they denied the misappropriation. No where in the record is there anything that would even remotely give rise to an inference that the decedent, A. P. Groth, had anything to do with the decision on the part of said surety corporation to deny the claim. * * *

* * * * *

"It may be said that the unlawful acts on the part of the decedent, A. P. Groth, was the reason for the action, but the cause of the action was certainly the refusal on the part of the insurer for the surety corporation to pay the demands made upon it by the plaintiff bank."

On appeal the bank contends that, since the prior action was the natural and proximate result of the tortious acts of A. P. Groth and

was instituted by it in good faith with reasonable grounds for believing that it would be successful, it is entitled to recover from Groth's estate the necessary expenses including auditors' and attorneys' fees incurred therein. Defendant argues that the misappropriation of Groth was not the cause of the prior litigation but rather that it arose because of the surety company's breach of its contract for indemnity furnished the bank; and further that, since Groth was not a party to such a contract and did not induce the surety company to deny liability thereunder, the prior action should not have the effect of increasing Groth's liability to the bank.

■ It is well settled that a person injured by the tortious conduct of another is entitled to recover from the other damages for all harm, past, present, and prospective, legally caused by the tort. Restatement, Torts, § 910. Likewise, where the natural and proximate consequence of a person's tortious act projects another into litigation with a third person, attorneys' fees and expenses reasonably incurred by the injured party in such litigation may be recovered from the one guilty of the tortious conduct. Restatement, Torts, § 914, states the rule as follows:

"A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover * * * for the reasonably necessary * * * attorney fees and other expenditures * * * incurred."

This principle is recognized in Bergquist v. Kreidler, 158 Minn. 127, 132, 196 N. W. 964, 966, where this court stated:

"* * * the litigation in which plaintiffs became involved was the direct, legitimate and a to-be-expected result of appellant's misrepresentation. The loss sustained by plaintiffs in conducting that litigation 'is plainly traceable' to appellant's wrong and he should make compensation accordingly."

This principle was likewise approved in Tarnowski v. Resop, 236 Minn. 33, 51 N. W. (2d) 801; and Dworsky v. Vermes Credit Jewelry, Inc. 244 Minn. 62, 69 N. W. (2d) 118, although in the latter it was not applied because the court there found that defendant had not

been guilty of tortious conduct thrusting plaintiff into third-party litigation. See, Turner v. Zip Motors, Inc. 245 Iowa 1091, 65 N. W. (2d) 427, 45 A. L. R. (2d) 1174; Indiana Nat. Life Ins. Co. v. Butler, 186 Ky. 81, 215 S. W. 949; Stiles v. Municipal Council, 233 Mass. 174, 123 N. E. 615, 4 A. L. R. 1365; McGaw v. Acker, M. & C. Co. 111 Md. 153, 73 A. 731.

■ Defendant argues that the rule should not be applied here since the undisputed facts indicate that the bank was not required to pursue the surety company but could have prosecuted the action against Groth directly for the shortages. In support of this contention, it is urged that the third-party litigation arose out of a breach of contract on the part of the surety company, and since Groth did nothing to induce such breach, there is no reason why he should be compelled to reimburse the bank for its expenses therein. The general rule above expressed, however, does not encompass an exception such as is suggested by defendant. The prerequisites to a defendant's liability for expenses incurred by a plaintiff in a third-party action are simply that such action shall have been conducted as a natural and proximate consequence of the defendant's tortious action and that plaintiff shall have conducted the same in good faith with reasonable ground for believing that its outcome would reimburse him for the damages occasioned thereby. The rule appears to be applied generally in all cases of this nature except where it is established that the prior litigation was either not the proximate result of the tortious conduct of another or was not undertaken in good faith. Here it is not disputed that Groth was guilty of tortious conduct, and there is nothing to indicate that the bank did not act in good faith in instituting the prior action against the surety company. The fact that the latter resisted the claim and compelled the bank to resort to litigation to enforce it should not inure to the benefit of the wrongdoer.

Nor do we feel that defendant should be permitted to successfully maintain the position that it was not decedent's tortious conduct that led to the prior litigation. On the contrary, it is clear that had it not been for such wrongful conduct it would not have been necessary for the bank to institute the prior action. Clearly, it was a natural and proximate result of such misconduct, and it was well within the bank's

prerogative to elect to bring action against the surety company as the quickest and most direct means of recovering its loss. In Tarnowski v. Resop, *supra,* where a similar argument was advanced, we said (236 Minn. 40, 51 N. W. [2d] 805):

"* * * It is not true, however, that, having elected to sue for recovery of that with which he [plaintiff] had parted, he is barred from proceeding against his agent to recover damages for his tortious conduct. While some of the allegations in plaintiff's complaint against the sellers are similar to or identical with those in his complaint in this case, insofar as the fraud is concerned, the right of recovery here against the agent goes much further than the action against the sellers. Many of the elements of damage against the agent are not available to plaintiff against the sellers. For instance, he has no right to recover attorneys' fees and expenses of the litigation against the sellers. He has that right against the agent."

■ Based upon the foregoing, it must follow that here the bank is entitled to recover the reasonable value of the expenses necessary for prosecution of the prior action. This would include the reasonable value of attorneys' fees and auditing fees essential to its successful prosecution. The findings of the trial court indicated that $14,396.54 had been incurred for such expenses, but there is no finding to establish that this amount was the fair and reasonable value thereof, or that all of the same were necessarily incurred in the preparation for and prosecution of the action.

There is testimony as to the extent of the auditing services which included an audit of the bank's records extending back approximately 5 years and that the bank's attorneys expended substantial time in preparation for and in prosecution of the prior litigation. There should be a specific finding as to the reasonable value of the services rendered in so far as they were necessary in the preparation and for the prosecution of the prior action. After the court has made such findings, judgment against defendant for the amount arrived at, plus costs and disbursements, should be entered in favor of the bank.

Reversed and remanded for further proceedings in accordance with this opinion.