Peter R. PAIDAR, et al., Plaintiffs,

v.

Charles E. HUGHES, defendant and third-party plaintiff, Appellant,

v.

Guardian Title, Inc., et al., Third–Party Defendants,

Fidelity National Title Insurance Company of New York, third-party defendant, Respondent.

No. C6–98–2192.

Supreme Court of Minnesota.

Aug. 3, 2000.

Rehearing Denied Sept. 1, 2000.

Joseph B. Marshall, Marshall and Associates, P.A., Circle Pines, for appellant.

James A. Beitz, Micahel C. Hagerty, Hagerty, Johnson, Albrightson & Beitz, P.A., Minneapolis, for respondent.

## OPINION

LANCASTER, Justice.

 This slander of title action comes to us on appeal from summary judgment in favor of respondent, Fidelity National Title Insurance Company of New York (Fidelity). The district court implicitly held that attorney fees cannot constitute special damages[1] necessary to plead a slander of title action. The Minnesota Court of Ap-

---

1. "Special damages are those [that] 'are the natural, but not the necessary and inevitable result of a wrongful act'" or occurrence, whereas "general damages are the natural, necessary and usual result of the wrongful act." *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 275 n. 2 (Minn. 1995) (quoting Black's Law Dictionary 390 (6th ed.)).

peals affirmed. *See Paidar v. Hughes*, No. C6–98–2192, 1999 WL 300910 (Minn. App. May 11, 1999). We hold, consistent with the Restatement (Second) of Torts § 633 (1977),[2] and the rule adopted in a majority of jurisdictions, that reasonable attorney fees that are a direct consequence of an action to quiet title that results from slander of title constitute special damages. We therefore reverse and remand for proceedings consistent with this opinion.

Appellant Charles E. Hughes (Hughes) is the father-in-law of Joel Holstad (Holstad), the principal shareholder and officer of two separate corporations, Guardian Title, Inc. (Guardian) and National Title Resources Corp. (National). Hughes is a former member of the Board of Directors of National. Prior to March 31, 1995, Guardian was the owner of the Forest Lake property subject to the slander of title action in this case.

From approximately 1992 to 1995, National was an agent of Fidelity. In 1995, Fidelity terminated its agency agreement with National due to shortages in National's escrow accounts and National's breach of its agency agreements with Fidelity. To forestall legal proceedings, Holstad assigned the title interests for various properties allegedly possessed by National to Fidelity. In March 1995 Holstad represented to Fidelity that National had an interest in the Forest Lake property–and at Fidelity's request National conveyed a security interest in the property to Fidelity. National, in fact, had no interest in the property and the "assignment" to Fidelity was a nullity. Two weeks after National conveyed the illusory interest in the property to Fidelity, Guardian transferred the same property to Hughes by warranty deed for $40,000. Hughes promptly filed the deed from Guardian and it was recorded before Fidelity's illusory security interest was recorded on April 4, 1995.

Two years thereafter Hughes decided to sell the property and in May 1997 he found buyers in Peter and Ardith Paidar. Hughes agreed to sell the property to the Paidars on a contract for deed for a purchase price of $217,000. The contract for deed in pertinent part: (a) required Hughes to deliver marketable title, and (b) permitted the Paidars to take immediate possession pending the sale. The Paidars were also permitted to make limited improvements to the property provided that lien waivers were obtained and Hughes consented in writing to any improvement in excess of $10,000. The purchase agreement made no reference to any interest held by Fidelity. The Paidars immediately took possession of the property and made approximately $50,000 in improvements.

A title search revealed the Fidelity assignment.[3] When the Paidars learned of the encumbrance, they refused to close

**2.** Section 633 of the Restatement provides:
(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to
(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and
(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

**3.** The title search also revealed an encumbrance by third-party defendant McCullough. At some time prior to March 31, 1995, third-party defendant Robert McCullough individu-

ally, and/or McCullough Companies, a Minnesota General Partnership (collectively McCullough), purchased from Guardian certain items of personal property located on the property, including a shed and commercial light poles. Hughes apparently was not a party to the transaction between Guardian and McCullough. McCullough removed some or all of the commercial light poles, but did not remove the shed and some other items. In February 1997 McCullough filed a document containing the legal description of the property and a document purporting to be the purchase contract between Guardian and McCullough with Washington County, which represented that McCullough had an interest in the property.

until the encumbrance was removed. When Hughes attempted informally to obtain a release of the assignment, Fidelity refused unless Hughes would submit to a deposition in an unrelated matter being litigated between Fidelity and Holstad.

On June 26, 1997, Hughes served notice on the Paidars that he had declared the Paidars' purchase agreement null and void. Hughes then commenced an unlawful detainer action against the Paidars to evict them from the property. Trial on the unlawful detainer action commenced on July 28, 1997. A settlement was reached prior to the end of the trial. The settlement agreement provided in pertinent part that: (1) the settlement agreement would constitute the new purchase agreement at the same price; (2) the Paidars would take the contract for deed (and eventually title) in its present condition; and (3) the Paidars would guarantee to defend, hold, and save Hughes harmless from any claims made by Fidelity on its security interest. The unlawful detainer action was then dismissed on its merits with prejudice.

On July 21, 1997, prior to the trial on the unlawful detainer action, the Paidars sued Hughes in a declaratory judgment action for fraud and specific performance of the contract for deed. Hughes answered the Paidars' complaint and then named, *inter alia*, Fidelity as a third-party defendant in both a slander of title action and an action to quiet title. In his action against Fidelity, Hughes states that the Paidars waived any objections to title based on Fidelity's security interest. By November 5, 1997, all remaining claims between the Paidars and Hughes were resolved and the property was transferred.

However, the slander of title action remained, Hughes claiming Fidelity's refusal to release its security interest in the property caused him to incur attorney fees and costs. Fidelity moved for summary judgment, claiming Hughes could not prove special damages required for an action for slander of title. The district court granted Fidelity's motion, stating the following:

Minnesota requires a showing of special damages in slander of title actions. *Wilson v. Dubois* [35 Minn. 471], 29 N.W. 68, 69 (Minn.1886). Legal fees incurred to pursue the cause of action are not recoverable without a showing of special damages. *Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc.*, 352 N.W.2d 1 (Minn.1984). *Wilson* at 69.

Hughes claims to have incurred over $20,000.00 in legal fees to pursue this action. He is not claiming any special damages. Since no special damages have been alleged, Hughes' slander of title action cannot proceed. Fidelity's motion for summary judgment must be granted.

On review of this determination, the court of appeals did not address the question whether attorney fees constitute special damages. While observing that special damages are a necessary element of the cause of action, the court of appeals specifically found that, "[a]ny attorney fees amassed during [the] litigation did not arise as a consequence of Fidelity's actions" and affirmed summary judgment.

## I.

When we review an order for summary judgment, we examine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *See State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Whether attorney fees may be considered special damages for purposes of a slander of title action is a question of law. Our review is therefore de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

The elements required for a slander of title claim are:

(1) That there was a false statement concerning the real property owned by the plaintiff;

(2) That the false statement was published to others;

(3) That the false statement was published maliciously;

(4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

*See Wilson v. Dubois,* 35 Minn. 471, 472–73, 29 N.W. 68, 68–69 (1886); *see also Kelly v. First State Bank of Rothsay,* 145 Minn. 331, 332, 177 N.W. 347, 347 (1920). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. *See Kelly,* 145 Minn. at 332, 177 N.W. at 347.

Both Hughes and Fidelity agree that in Minnesota a slander of title action requires a showing of special damages. Hughes asserted to the district court that attorney fees necessary to clear title resulting from slander on the title *are* special damages. Without expressly addressing that assertion, the district court granted summary judgment to Fidelity stating only that "Hughes has admitted he has suffered no special damages in this action." In fact, Hughes' admission on special damages was simply that he suffered no loss attributable to a lost sale or any damages attributable to *anything other* than attorney fees. The district court apparently ruled based on the implicit assumption that attorney fees cannot be special damages in a slander of title action.

 The issue of whether attorney fees incurred to remove a cloud on title constitute special damages in a slander of title action is one of first impression in Minnesota. The clear majority of states that have considered this issue hold, consistent with the Restatement (Second) of Torts § 633(1)(b) (1977), that attorney fees

are special damages in a slander of title action. *See* James O. Pearson Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title,* 4 A.L.R.4th 532, 560–62 (1981) & 92–93 (Supp.1999). Professors Prosser and Keeton have noted the soundness of the policy contained in the Restatement: "It would also appear obvious that special damages include the expenses of legal proceedings necessary to remove a cloud on the plaintiff's title caused by the [slander of title] * * *." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 128, at 972 (5th ed.1984). Only Texas requires proof of the loss of a particular sale to establish special damages. *See Clark v. Lewis,* 684 S.W.2d 161, 164 (Tex.App.1984) (holding attorney fees not recoverable as special damages in slander of title action because attorney fees are not a pecuniary loss); *A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145, 146 (Tex.1982).

In examining Minnesota precedent, we are convinced that adoption of the majority rule is consistent with the common law in this state. We have adopted Restatement of Torts § 914 (1939),[4] which sets forth a policy that substantially overlaps with the one set forth in section 633. *See Prior Lake State Bank v. Groth,* 259 Minn. 495, 499–500, 108 N.W.2d 619, 622 (1961). In *Prior Lake State Bank,* we held attorney fees to be recoverable when litigation with a third party was the natural and proximate consequence of defendant's tortious conduct (embezzlement from a bank). *Id.* at 622–23. Section 633 merely provides for recovery of litigation expenses when necessitated by the particular tort of tortious slander of title.

We have also allowed recovery of attorney fees in similar actions where one par-

---

**4.** Restatement (Second) of Torts § 914 (1977), contains nearly identical language to section 914 in the first Restatement and provides:
(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.
(2) One who through the tort of another has been required to act in the protection of

his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

ty's tortious conduct necessitated litigation by the other party. In *Tarnowski v. Resop*, 236 Minn. 33, 39–40, 51 N.W.2d 801, 804 (1952), we allowed recovery of attorney fees from litigation with a third party when the litigation was directly traceable to the defendant's false representations about a business for sale. We have also concluded that attorney fees are recoverable as special damages in malicious prosecution cases. *See, e.g., Mitchell v. Davies*, 51 Minn. 168, 169, 53 N.W. 363, 363 (1892).

In *Hill v. Okay Constr. Co., Inc.*, 312 Minn. 324, 347, 252 N.W.2d 107, 121 (1977), we held that attorney fees were recoverable when litigation with a third party was necessary. In *Hill*, an attorney's negligent representation forced his clients to defend themselves against outside creditors. *Id.* We allowed recovery from the negligent attorney of those litigation costs his clients incurred in defending against the creditors. *See id.*

We hold that the recovery of attorney fees for the tortious conduct at issue here, slander of title, is in accordance with our precedent. The special damages at issue here are not the same as those alleged in *Wilson v. Dubois*, where we stated that:

> Where loss of sale of a thing disparaged is claimed and relied on as special damages occasioned by the disparagement, it is indispensable to allege and show a loss of sale to some particular person, for the loss of a sale to some particular person is the special damage, and of the *gist* and *substance* of the action.

35 Minn. at 473, 29 N.W. at 69. Hughes does not claim a "loss of sale" as his special damages; he claims attorney fees as his damages. The fact that Hughes ultimately was able to sell the property at issue here should not prevent him from recovering his attorney fees if he can show that he necessarily incurred them as a direct result of Fidelity's tortious actions.

## II.

■ Fidelity argues that even if the court holds that attorney fees constitute special damages in this context, Hughes' claim must fail because Fidelity's actions did not cause Hughes to incur attorney fees. Specifically, the Paidars sued Hughes after Hughes attempted to cancel the purchase agreement–not as a result of Fidelity's refusal to release its security interest. The district court did not address this causation argument, but simply held that because Hughes did not allege special damages he could not recover. In contrast, the court of appeals proceeded to determine the causation issue–agreeing with Fidelity that any attorney fees did not arise as a consequence of Fidelity's actions.

■ Causation is generally a question of fact left to the finder of fact that only becomes a question of law "where different minds can reasonably arrive at only one result." *Lyons v. Scnei, Inc.*, 262 N.W.2d 169, 170 (Minn.1978). The question whether Fidelity's actions required Hughes to litigate some or all issues in this property dispute is a question not significantly different in kind from the question whether an attorney's negligence "would have made a difference" in an attorney malpractice claim. *Admiral Merchants Motor Freight v. O'Connor & Hannan*, 494 N.W.2d 261, 267 (Minn.1992). We leave the causation question in an attorney malpractice claim for the jury. *See Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 409 (Minn.1994); *Admiral*, 494 N.W.2d at 267. Similarly, we should leave the fact-based causation question here for the district court to decide whether summary judgment is appropriate. *See generally Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981) (noting that a district court's proper function on summary judgment is not "to decide issues of fact but solely to determine whether there is an issue of fact to be tried" (citation omitted)).

Indeed, even if the determination of causation here were not a purely factual issue, the district court, which is markedly more familiar with the history of this litigation

than the appellate court, is particularly well-suited to determining whether the legal actions Hughes took can be traced to Fidelity's conduct.[5] Because the district court did not decide the issue of causation, we remand for that determination.[6]

The district court erred in assuming that attorney fees cannot be special damages. Because that was the sole basis on which it ruled, we reverse the court of appeals' affirmance of the summary judgment and remand for further proceedings consistent with this opinion to determine whether any or all of the attorney fees alleged by Hughes were a direct consequence of the action to quiet title pursuant to the slander of title action.

Reversed and remanded.

PAUL H. ANDERSON, Justice (dissenting).

I respectfully dissent. We have not previously answered the question of whether, in an action for slander of title, attorney fees and other legal expenses incurred in clearing title are recoverable as special damages. This is an important question, deserving an answer. But the majority has essentially put the cart before the horse by adopting Section 633 in its entirety in the context of facts that do not present the issue it seeks to decide.

A thorough examination of the facts and procedural history of this case makes two clear points. First, the record does not show a clear nexus between appellant Charles E. Hughes' alleged attorney fees and legal expenses and any attempt to clear title to the real property (Property). Further, the record demonstrates that Hughes has not made even a prima facie showing that his quiet title and slander of title claims against Fidelity National Title Insurance Company of New York (Fidelity) were the direct and necessary consequence of Fidelity's actions. Accordingly, this case falls woefully short of presenting a proper context within which to adopt a rule on whether attorney fees may constitute special damages. Therefore, we should either dismiss as improvidently granted or, in the alternative, affirm the district court's grant of summary judgment.

Both Hughes and Fidelity agree that a pecuniary loss is required in a slander of title action. Hughes concedes that he sustained no pecuniary loss in the form of special damages other than his attorney fees and other legal expenses incurred in his prior litigation with the Paidars, but he claims that these are special damages. In support of his claim, he asserts that the clear trend nationally in recent years has been to recognize that attorney fees and other legal expenses incurred in clearing a disparaged title are recoverable as special

---

5. The dissent claims that "the unlawful detainer action is unrelated to removing any impairment of vendibility. There is even less of a connection between Fidelity's conduct and the Paidars' specific performance action." The problem between the Paidars and Hughes arguably arose because Hughes was unable to deliver marketable title due to Fidelity's intransigence. Delivery of marketable title is part of the specific performance the Paidars sought and which arguably led to the unlawful detainer action. However, as noted above, the determination of the connection between the litigation and Fidelity's conduct should be left for the district court and perhaps for a jury.

6. The dissent complains that our opinion is simply advisory because causation has not been established. Our remand is consistent with recent opinions such as *Moreno v. Crook-*

*ston Times Printing Co.*, 610 N.W.2d 321 (Minn.2000), in which the district court incorrectly applied the fair and accurate reporting privilege. We reversed and remanded to the district court for a factual determination because we did not have a sufficiently developed record. *See id.* at 334. *Here* our remand is likewise for the district court to make a new factual determination based on the correct legal standard: whether special damages were incurred as a necessary consequence of litigation to remove a cloud on title. The dissent claims that review in *Moreno* was necessary only because the court of appeals had also misapplied the legal standard. Here the court of appeals decided a factual issue, causation, not reached by the district court. Because that determination is properly made by the district court, remand is appropriate.

damages in the common law action of slander of title. He specifically cites *Rorvig v. Douglas,* 123 Wash.2d 854, 873 P.2d 492, 497 (1994), to support this argument. He further asserts that the Restatement supports allowing recovery of litigation expenses in a slander of title action and urges that we adopt Section 633 of Restatement (Second) of Torts.

Fidelity asserts that Hughes' emphasis on Section 633 is misplaced. It claims that even were we to adopt Section 633 of the Restatement, Hughes would not be entitled to recovery because the prior litigation expenses he incurred were not a direct consequence of Fidelity's conduct. Thus, the key question becomes whether the attorney fees and other legal expenses incurred by Hughes during his prior litigation with the Paidars were a direct consequence of Fidelity's conduct. Fidelity asserts that the record does not demonstrate that Hughes' initial, unilateral action to evict the Paidars from the property was caused by Fidelity's refusal to relinquish its claims on the Property. If Fidelity's conduct did not necessitate the litigation with the Paidars, the attorney fees and other legal expenses are not recoverable. *See Stickney v. Goward,* 161 Minn. 457, 459–60, 201 N.W. 630, 631 (1925).

Section 633 specifically relates to the recovery of pecuniary loss for "impairment of vendibility or value caused by disparagement" and the expense of measures reasonably necessary to "remove the doubt cast upon vendibility or value by disparagement." Restatement (Second) of Torts § 633(1)(a)-(b) (1977). For there to be recovery, there must be legal causation. Here the comments to Section 632 of the Restatement are helpful. The injurious statement must be a substantial factor that brings about the loss. *See* Restatement (Second) of Torts, § 632, cmt. b (1977). A relevant part of the comment to Section 632 reads as follows:

> Thus the vendibility of land, chattels or intangible things may be impaired when a statement makes them appear less desirable for purchase, lease or other dealings than they actually are. But the *liability does not accrue until the publication of the disparaging matter operates as a substantial factor in determining the decision of a prospective purchaser or other interested persons, to refrain from buying or otherwise acquiring the thing in question, or causes the owner to incur the expense of such legal proceedings as may be available or necessary to remove the cloud upon the vendibility that is cast upon it by the publication.*

*Id.* (emphasis added).

Hughes' prior litigation involved (1) the unlawful detainer action brought by Hughes to have the Paidars evicted, and (2) the Paidars' declaratory judgment brought one week before the trial of Hughes' unlawful detainer action in which the Paidars sought specific performance of the purchase agreement. For Hughes to recover, Fidelity's conduct must be the immediate and direct legal cause of the unlawful detainer action, but the unlawful detainer action is unrelated to removing any impairment of vendibility. There is even less of a connection between Fidelity's conduct and the Paidars' specific performance action. In this action, the Paidars in essence sought specific performance of the purchase agreement that, in the end, they performed.

It was not until after the Paidars' specific performance action was filed and settled that Hughes sought to "quiet title" to the Property and he did not commence his action until August 21, 1997, 24 days after the Paidars, on the record in open court, waived any objection to Fidelity's filing. At this point, the quiet title action was not necessary to preserve this deal or the vendibility of the property.

Further, the Paidars did not seek to rescind the purchase agreement; rather, they were trying to get the court to enforce the purchase agreement. It was Hughes, by virtue of his unlawful detainer

action, who wanted to rescind the purchase agreement after the Paidars made nearly $50,000 in improvements to the property. By the time this action by Hughes was brought, the Paidars had guaranteed that they would defend, hold, and save Hughes harmless from any claims made by Fidelity. The prior litigation expenses with respect to the Paidars that Hughes seeks to recover were not the direct legal consequence of Fidelity's conduct. Rather, these litigation expenses were the consequence of Hughes' unlawful detainer action to eject the Paidars from the property after they had made significant improvements. The record on its face fails to support Hughes' claim even if we were to adopt Section 633.

We should at least require some prima facie showing of a legal causation for the alleged special damages before we adopt Section 633's statement of the law and remand to the district court for reconsideration. I conclude the district court properly granted Fidelity's summary judgment motion and the court of appeals properly affirmed. The district court may have based its analysis on what the majority perceives to be an erroneous conclusion of law; however, the record supports the court's decision regardless of the propriety of that conclusion. We do not issue advisory opinions on hypothetical facts; rather, we make conclusions of law regarding the facts present in a given case. The majority's holding today is essentially an advisory opinion.[1]

I have one further concern with respect to the action taken by the majority. This case arises in the context of a cloud on title to real property. But Section 633 is much broader and applies to publication of an injurious falsehood that affects the vendibility or value of a product in any context. While the majority only addresses Section 633 in the context of a slander of title against real property, it does not so limit its holding. Consequently, to adopt this section in a case where the facts do not demonstrate that liability exists, the court, in what is an advisory opinion, adopts a new rule in a context that provides no clear boundaries for future application of the rule.

I would dismiss review of this matter as improvidently granted or, alternatively, affirm the decision of the lower court.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

GILBERT, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

---

**1.** The majority compounds its misunderstanding of this case by claiming that its decision is in accord with our earlier decision in *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321 (Minn.2000). The majority ignores the key and obvious difference between these two cases. In *Crookston*, we remanded after the district court misapplied the correct legal standard and the court of appeals reversed, incorrectly stating the law on the fair and accurate reporting privilege. *Id.* at 334. We remanded to the district court after discussing the correct legal standard and reversing the court of appeals. *See id.* Remand in *Crookston* was necessary after we had corrected the holding of the court of appeals, a holding binding on the lower courts of this state. In the case before us today, the court of appeals never reached the question of attorney fees as special damages. It affirmed the district court on the issue of causation, concluding as I do, that the record simply does not support Hughes' claims that any of this litigation was caused by Fidelity's actions. If the district court's statement of law in this matter is incorrect, it is not binding on any other court and does not compel review in the same manner. The adoption of a new rule of law should be based on facts that, if proven, support that rule. *See, e.g., Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn. 1998).