*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1220**

Nicole Curtis,
Appellant,

vs.

Jason Jenny,
Respondent.

**Filed May 4, 2015
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CV-13-139

Brett M. Larson, Molly R. Hamilton Cawley, Amie E. Penny Sayler, Messerli & Kramer P.A., Minneapolis, Minnesota (for appellant)

Wm. Christopher Penwell, Siegel Brill, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Cleary, Chief Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Appellant Nicole Curtis appeals from the district court's order granting summary judgment on all fourteen counts of her claim against respondent Jason Jenny. Jenny appeals from the district court's order granting summary judgment on his slander-of-title

counterclaim against Curtis. Because we conclude that no genuine issues of material fact preclude summary judgment, we affirm.

**FACTS**

Curtis is the host of Rehab Addict, a television show featuring Curtis's renovation of old homes. In August 2009, Curtis and her business partner purchased a property at 620 Minnehaha Parkway West in Minneapolis for $350,000. Curtis's renovations of the property were featured on her television show.

On January 11, 2012, Jenny purchased the property for $610,000. Jenny and Curtis were involved romantically at the time. Following the sale, Curtis's name was no longer listed on the title for the property. Curtis alleges that she and Jenny entered into a partnership agreement, in conjunction with the sale of the property to Jenny, which formed the basis of many of Curtis's later claims against Jenny.

After Jenny bought the property, Curtis and Jenny's relationship deteriorated and Jenny denied Curtis access to the property. On June 13, 2012, Jenny and Curtis entered into a purchase agreement in which Curtis was to purchase the property from Jenny. The purchase agreement included an addendum containing a release provision, which purported to release Jenny from "any and all claims by Buyer relating to the Property and resulting from [Seller's] ownership thereof."[1] However, the closing never took place because Curtis was unable to obtain financing to buy the property.

---

[1] Before the district court, Curtis argued that the release was invalid because her signature on the final version of the purchase agreement was forged. The district court found that Curtis's signature was valid and concluded that the release was enforceable against Curtis. Curtis does not dispute the validity of the purchase agreement before this court.

2

In January 2013, Curtis filed a complaint against Jenny that included fourteen counts, several of which arose from the partnership agreement that Curtis and Jenny allegedly entered into at the time Jenny purchased the house. Soon after filing the complaint, Curtis recorded a notice of lis pendens against the property.

Jenny filed a motion for summary judgment on Curtis's claims and a motion for leave to add a slander-of-title counterclaim against Curtis. Following the completion of discovery, the district court heard Jenny's motion for summary judgment. In December 2013, the district court granted summary judgment dismissing all of Curtis's claims.

After the court granted summary judgment dismissing Curtis's claims, Curtis filed a motion for summary judgment concerning Jenny's slander-of-title claim. The district court held a separate hearing regarding the slander-of-title claim and other issues in Curtis's motion. In May 2014, the district court granted Curtis's summary judgment motion dismissing Jenny's slander-of-title claim. Curtis appealed the district court's decision to grant summary judgment on her claims, and Jenny filed a notice of related appeal regarding the grant of summary judgment on his claim.

## DECISION

Summary judgment is appropriate where the entire record shows that there is "no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A fact is material if it would affect the result or outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259-60 (1976). No genuine issue of material fact exists "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (alteration in original) (quotation omitted).

Summary judgment is inappropriate where the nonmoving party presents "sufficient evidence to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 507 (Minn. 2006). If the evidence presented would require the factfinder to "assess, evaluate, or determine credibility," summary judgment should not be granted. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 327 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). However, there is no genuine issue of material fact when the nonmoving party only presents evidence that "merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case . . . [T]he party resisting summary judgment must do more than rest on mere averments." *DLH, Inc.*, 566 N.W.2d at 71.

On appeal from summary judgment, this court reviews de novo (1) whether a genuine issue of material fact exists and (2) whether the district court erred in its application of the law. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). In doing so, this court views the evidence in the light most favorable to the party against whom summary judgment was granted. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002) (citations omitted).

## I.

Curtis argues that four specific errors should preclude summary judgment as to counts I-VIII, XI, XII, and XIV of her original complaint. Each is addressed in turn below.

### A. There is no genuine issue of material fact as to whether Jenny made statements to the bank regarding Curtis's credit

Counts XI and XII of Curtis's claim alleged that Jenny committed defamation and tortious interference with a business relationship by making statements to Bridgewater Bank regarding Curtis's creditworthiness, which resulted in the bank denying Curtis financing to buy the property. The district court concluded that Jenny was entitled to summary judgment on counts XI and XII because Curtis "has not submitted any competent evidence that Jenny made any of the alleged statements." Curtis argues that the district court erred because she submitted two pieces of evidence of Jenny's alleged statements: (1) her own affidavit stating that Mr. Johnson of Bridgewater Bank told her that someone called the bank and commented as to her creditworthiness the day before the closing was scheduled, and (2) Jenny's deposition testimony that he, his attorney, and his realtor each called Bridgewater Bank the day before the closing.

The district court concluded that Curtis's testimony about Johnson's statements to her was not probative of whether the alleged statements were made, because Curtis's testimony was hearsay and its "evidentiary value rests on the truth of an unsworn statement." Inadmissible hearsay must be disregarded on a motion for summary judgment. *Murphy v. Country House, Inc.*, 307 Minn. 344, 349, 240 N.W.2d 507, 511

(1976). Curtis does not dispute the district court's characterization of her testimony regarding Johnson's statements as hearsay, but she argues that Minn. R. Evid. 803(21) makes her hearsay testimony admissible. Minn. R. Evid. 803(21) allows admission of hearsay statements as to "[r]eputation of a person's character among associates or in the community."

The hearsay statements at issue are Johnson's purported statements asserting that someone called the bank and made statements regarding Curtis's creditworthiness. Curtis did not offer Johnson's statements in order to show the reputation of anyone's character among associates or in the community. Rather, Curtis reported her conversation with Johnson to prove that someone made statements to the bank regarding Curtis's creditworthiness. Because Curtis's testimony as to Johnson's statements was offered for the purpose of proving the truth of the matter that the statements asserted, not for the purpose of showing reputation, the statements were not admissible under Minn. R. Evid. 803(21). Therefore, the district court did not err by disregarding Curtis's testimony as to Johnson's hearsay statements.

The district court's summary judgment order did not mention Jenny's testimony that he, his attorney, and his realtor all called the bank the day before the closing. Given the timing of the phone calls, one could infer that these calls could have included information about Curtis's financing. However, when Jenny testified about the phone calls to the bank, he stated that they were merely to inquire about the status of Curtis's loan and whether there was an appraisal scheduled for the property before the closing date. Curtis did not offer any evidence showing that the phone calls also included

6

statements as to her creditworthiness. Curtis asked the court to treat her mere inference that the phone calls could have included such statements as probative of whether such statements took place.

At the time of the summary judgment hearing, Curtis had been unable to schedule a deposition with Johnson to determine the content of the phone calls. The court stated that it would wait for Johnson's deposition to occur before it decided whether the three phone calls had any probative value on the question of Jenny's alleged statements to the bank.

Johnson's eventual deposition did not substantiate Curtis's speculation that the phone calls included statements regarding her creditworthiness. Johnson stated that he had never talked to or met Jenny. Johnson did not know whether anyone from the bank had ever talked with Jenny, either before or after the scheduled closing date. Johnson did not recall telling Curtis that someone had called the bank and made statements regarding her creditworthiness. Johnson stated that sometimes realtors call the bank for a status update on loan applications. In short, Johnson's deposition did not provide any evidence that the content of the calls included statements about Curtis's creditworthiness. Therefore, the district court was justified in concluding that the mere existence of the phone calls was not probative as to whether Jenny made the alleged statements. Because Curtis did not present any other evidence that Jenny made statements regarding her creditworthiness, there is no genuine issue of material fact as to whether Jenny made the alleged statements.

**B.      There is no genuine issue of material fact as to whether the release was enforceable against Curtis**

The district court held that the release in the purchase agreement was enforceable against Curtis and applied the release to dismiss counts I-VIII and XIV of Curtis's complaint. Curtis argues that the release was unenforceable because Jenny breached the agreement and/or frustrated the purpose of the agreement by allegedly making the representations discussed above regarding her creditworthiness, and that these representations caused the bank to deny Curtis financing for the property. Curtis asserts that genuine issues of material fact remain as to (1) whether Jenny made the alleged statements to the bank, and if so (2) whether those statements caused the bank to withdraw financing.

As discussed above, the district court did not err by concluding that there was no genuine issue of material fact as to whether Jenny made the alleged statements. Furthermore, even if Curtis could show that Jenny made the statements, the record included a letter that showed there was no genuine issue of material fact as to whether the alleged statements *caused* the bank to withdraw financing. The letter pre-dated Jenny's alleged statements to the bank, and it stated reasons for denying Curtis credit that had nothing to do with statements allegedly made by Jenny. Curtis does not challenge the validity of the letter. Because the decision to deny Curtis credit was apparently made before the statements Jenny allegedly made to the bank, the alleged statements cannot have *caused* the bank to decide to withdraw financing. Therefore, there are no genuine

issues of material fact that would undermine the enforceability of the release of claims in the purchase agreement.

### C. The release precluded several of Curtis's claims

Curtis additionally asserts that the district court erred as a matter of law in its interpretation of the release in the June 2012 purchase agreement. "The construction and effect of an unambiguous contract are questions of law and reviewable de novo." *Banbury v. Omnitrition Int'l*, 533 N.W.2d 876, 880 (Minn. App. 1995). In its entirety, the release provision read as follows:

> Upon the execution of this agreement Seller shall be released from any and all claims by Buyer relating to the Property and resulting from his ownership thereof, except for Seller's obligation to convey the property in the manner described in the Purchase Agreement upon the completed performance by Buyer.

In the district court's order granting summary judgment, the court grouped together all of Curtis's claims that related to the property, counts I-VIII and XIV. Curtis does not challenge the court's characterization of these counts as relating to the property. Instead, Curtis asserts that the use of the conjunctive "and" in the release means that the release only precludes claims that both relate to the property *and result from* Jenny's ownership of the property. *See TCM Props., LLC v. Gunderson*, 720 N.W.2d 344, 349 (Minn. App. 2006) (recognizing that when "and" is used, both elements must be present for application of provision).

Jenny argues that this contract-interpretation argument is not properly before this court because Curtis did not raise it before the district court. On appeal, litigants are

generally bound by the theories upon which the action was actually tried in the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Before the district court, the only issues Curtis raised regarding the release were whether Curtis's signature was valid and whether the release was enforceable against her claims. Curtis should have raised all arguments that would have prevented the court from enforcing the release against her claims. Curtis never argued that, even if the release were enforceable, it should not apply to any of the counts of her claim because of its conjunctive wording. Therefore, Curtis appears to have waived this argument.

Even if the contract-interpretation argument were properly before this court, it would be unconvincing. The words "resulting from [Mr. Jenny's] ownership" are very broad. Therefore, they do little to restrict the types of claims to which the release applies. All of the claims to which the district court applied the release could arguably be "resulting from [Mr. Jenny's] ownership," because those specific claims would not have arisen if Jenny had not owned the property. Given the broad language of the release, the district court did not err by concluding that counts I-VIII and XIV were barred by the release.

Curtis argues here that, even if the release is valid and enforceable to preclude some of her claims, she "may still recover under the issues related to breach of the partnership." Curtis asserts that there is a genuine issue of material fact as to whether the partnership agreement existed. However, Curtis does not identify which specific claims relate to breach of the partnership that would not be precluded by the release.

10

The district court concluded that all of the claims arising from the alleged partnership were precluded by the release because they also related to the property. We agree. Therefore, even if there was a genuine issue of material fact as to the existence of the partnership agreement, it would not preclude summary judgment on any of Curtis's claims.

## II.

Jenny asserts that the district court erred by granting summary judgment on his slander-of-title claim against Curtis. A slander-of-title claim requires the claimant to prove four elements, including the existence of a "false statement concerning the real property" owned by the claimant. *Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000). A false statement exists where a party files a notice of lis pendens that the party knows to be inoperative. *See id.* at 280. A slander-of-title claim fails if the party acts in good faith and records an instrument that the party has a right to file. *Kelly v. First State Bank of Rothsay*, 145 Minn. 331, 333, 177 N.W. 347, 347-48 (1920). The court concluded that there were no genuine issues of material fact as to whether the notice of lis pendens included a false statement, because Jenny did not present probative evidence that Curtis filed the notice of lis pendens with knowledge that it was inoperative.

Jenny argues that there is a genuine issue as to whether Curtis knew the notice of lis pendens was inoperative at the time she filed it. Jenny's argument relies on the premise that Curtis knew, at the time that she filed the notice of lis pendens, that none of the counts in her complaint had any merit. In support of this premise, Jenny argues that

the release in the purchase agreement should have put Curtis on notice that her claims were barred.

We agree with the district court that the existence of a release would not necessarily bar all of Curtis's claims, because the parties clearly dispute the proper application of the release. Nor does the failure of Curtis's lawsuit provide any evidence that Curtis filed the notice of lis pendens with knowledge that it was inoperative. As the district court emphasized, to hold otherwise would mean that "every unsuccessful litigant who filed a notice of lis pendens would be potentially liable for slander of title."

Jenny argues that he presented additional evidence that Curtis filed the notice of lis pendens in bad faith and with knowledge that the notice was inoperative. Jenny presented affidavits and deposition testimony from Curtis's previous boyfriends and business partners attesting to their relationships with Curtis, and evidence that Curtis filed the notice of lis pendens near the same time that she wrote about her dispute with Jenny on social media. Jenny introduced this evidence in an attempt to establish that Curtis had a pattern of "maliciously and ruthlessly manipulating and coercing four men in an attempt to enrich herself beyond any possible legal entitlement." Jenny asserts that this pattern-of-conduct evidence shows that Curtis acted in bad faith here, too.

Although the court did not specifically invoke any evidentiary rules to exclude this evidence, the district court could reasonably have concluded that this evidence was inadmissible for the purposes for which Jenny offered it. On a motion for summary judgment, affidavits are limited to "such facts as would be admissible in evidence." Minn. R. Civ. P. 56.05. "Evidence of another crime, wrong, or act is not admissible to

prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). However, such evidence may be admissible for other purposes, including proof of intent, knowledge, or absence of mistake. *Id*. We review a district court's evidentiary rulings for an abuse of discretion. *Doe 76C v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012).

The pattern-of-conduct evidence Jenny submitted was apparently intended to prove Curtis's character in order to show that she acted in conformity with her prior actions. In theory, this evidence could be admissible to show Curtis's knowledge or intent. However, this situation is sufficiently distinguishable from the other situations, so the court could reasonably have concluded that the evidence of Curtis's behavior in other romantic and business relationships was not probative of Curtis's knowledge or intent in this situation. Therefore, Jenny has not shown that the district court abused its discretion by treating the pattern-of-conduct evidence as inadmissible.

Aside from the existence of the release and the pattern-of-conduct evidence, there is no evidence in the record showing that Curtis filed the notice of lis pendens in bad faith or with knowledge that it was inoperative. Therefore, the district court did not err by concluding that there were no genuine issues of material fact as to whether Curtis's notice of lis pendens included a false statement. Curtis was entitled to summary judgment as a matter of law on Jenny's slander-of-title claim.

Because we agree with the district court that no genuine issues of material fact exist that would preclude summary judgment on either of the parties' claims, we affirm.

**Affirmed.**